JUDGE SIMPSON
delivered the opinion of the codrt:
In the cases of Rouse vs. Williams and McLean vs. Nixon, in which opinions were delivered at the December term, 1857, it was decided that where a cause was remanded by this court, with directions to the circuit court to render a particular decree or judgment, the case had to be regarded as being finally disposed of to that extent; and no pleadings could be filed in the circuit court that would have the effect of. avoiding the mandate of this court, unless they were of such a character as would authorize a final decree or judgment to be reviewed or vacated, after the expiration of the term at which it had been rendered. As remarked by the court in the case of Kennedy, &c., vs. Meredith, *223 (4 Mon., 411,) “before reversing a decree in tbis court, such decree must be given,.or be directed to be given, as the court below ought to have rendered in the first instance. The directions thus given by this court are not in the power of the, court to revoke, after the term of the court has ended. Far less are they in the power of the inferior court, which has not the option to obey or disobey.”
These principles are applicable to the present case. When it was formerly in this court, it was decided that Wickliffe was entitled to a specific execution of the contract, but that the purchase money was not all paid. The amount unpaid was ascertained, and the devisee of the vendor was declared to have a lien on the land to secure its payment. The circuit court was directed to enter a decree in conformity with these principles. The question therefore is, had such a decree been rendered, would Wickliffe have been entitled to any relief on the suplementary pleadings and proceedings in the cause ?
In the case referred to of Rouse vs. Williams, it was said in substance that the court below ought to have entered a decree according to the mandate of this court, before it allowed any supplementary pleadings to be filed; but as a different course had been adopted, the proceedings would not on that ground alone be deemed to be erroneous. Inasmuch, however, as the supplementary pleadings -did not show any sufficient reason for setting aside the decree, if it had been rendered, the party was not entitled to the relief he asked for, and it was the duty of the circuit court to carry the mandate of this court into effect.
Applying this rule in the present case, we will disregard the irregularity that was committed in allowing the supplementary pleadings to be filed, before a decree was rendered in pursuance of the mandate of the court; and we will proceed to test their validity, considering them as having been exhibited after such a decree had been regularly entered and placed beyond the power of the court to disturb, except for such cause as would have authorized it to vacate it.
The fact presented by the supplementary pleadings would, if it had been relied on, in apt and proper time for that purpose, *224 have entitled Wickliffe to a rescission of the contract. The doctrine is well settled, that a vendor cannot enforce the specific execution of a contract, unless he has a good title to the land sold. But here there was a decree for a specific execution, on the application of the purchaser himself, without any objection to the title, in which the rights of the parties were adjusted and determined, on the principle that the contract should be specifically executed. The question, therefore, now is, not what the purchaser could have claimed before the decree was rendered, but it is, what must he now rely upon to enable him to review that decree, set it aside, and place himself in the attitude he occupied before the rights of the parties had been settled and determined by the court ?
Assuming the existence of the alleged defect in the title, the principal matter to be considered is, whether it was discovered at such a time and under such circumstances as furnishes the party with a reasonable excuse for failing to rely upon it, in the original suit. And as the allegations on this subject, contained in his supplemental bill, are not controverted in the answer, they must be regarded as true. He alleges that the discovery of the defect in the title was not made by him until after the final decree was rendered in the circuit court; but he wholly fails to allege any reasonable excuse for his failure to examine the title at a more early period. Now the doctrine is well settled, that the fact relied upon to entitle a party to relief against a decree, must not only have been discovered too late to have been used upon the trial, but must have been of such a nature, or so concealed, that it could not have been previously discovered by the use of reasonable diligence. The deeds by which the defect in the title is manifested were of record in the county where Wickliffe resided, and were accessible to all persons. By ordinary diligence he could have discovered, at any time during the pendency of the suit, all the matters which he now relies upon. As a purchaser, the law regards him as constructively notified of any defect in his vendor’s title that appears of record. Besides, it is against the settled policy of the law to permit a party to- a suit to be careless and negligent, until the suit has been tried and decided, and then to awaken *225 up and bring forward matters which might, by ordinary diligence, have been produced and relied on upon the trial. In this case there was no concealment or misrepresentation by the adverse party, nothing to delude or deceive the purchaser. The only reason assigned by him for failing to investigate the title was, that he entertained a confident belief that the whole of the purchase money was paid, and if so,-he was wholly indifferent, as may be inferred from his statement, as to the condition of the title. That, however, does not constitute a legal excuse for the want of diligence in looking into the title, nor a sufficient reason for not having brought the title into question in the original suit. The supplemental bill did not, therefore, present such a case as authorized the court below to disregard the decree for a specific execution, and to decree a rescission of the contract.
But it seems to be supposed that there is something in the response which was made by this court, to the petition for a rehearing, that authorized the granting of relief upon the supplemental bill. It'must be recollected, however, that the mandate of the court remained unchanged, and the suggestion in the response was not intended for the court below, nor could it have any effect in controlling or modifying the directions contained in the mandate. Nor is there anything in the language used in the response that justifies the conclusion that any equitable principle, or rule of practice, was to be disregarded or departed from in obtaining the relief referred to by supplemental pleadings. If a defect existed in the title, and that defect had been recently discovered, then, if the discovery were made under such circumstances as would sustain a supplemental bill in the nature of a bill of review, the decree which was rendered might be vacated and the entire contract rescinded. If, however, the discovery was not thus made, then, such a case might be presented as would entitle the petitioner to relief to the extent that the title of the vendor proved to be defective. This was the evident meaning of the language used in the response; but even if it could be construed to mean anything else, which we do not admit, it was only an intimation, which did not form any part of the opinion of the court, and was not *226 intended to regulate or govern the action of the court below on the subject. As, then, the discovery was not made under such circumstances as authorized the party to rely upon the alleged defect of title to vacate the decree and obtain a rescission of the contract, the next question to be considered is, has he presented such a case as entitles him to any relief, if the title to part of the land be defective.
If a decree had been rendered, in conformity with the principles of the opinion of this court, although it would have fixed and determined the amount of the purchase money that was still due and owing, and have given Mrs. Denny a lien on the land to secure its payment; yet the money would have remained unpaid, and Wicldiffe being in possession, and the estate of the vendor, and his devisee being insolvent, he had a right to suspend the collection of the balance of the purchase money until he could test the validity of the title. It is true that a defect in the title to part of the land would not authorize a rescission of the contract, but only relief pro tanto, inasmuch as Wicldiffe, under the decree, occupies virtually the attitude of a purchaser under an executed contract. He occupies that attitude, because the decree, not having been vacated or set aside by his supplemental proceedings, has to be specifically executed by a conveyance to him of the legal title. Still, however, he is entitled to relief commensurate with the loss ensuing from the defect in the title, if there be one; but this relief he can only obtain by bringing the parties before the court from whom he apprehends danger, in order that they may assert their right, and thereby have the question of title finally litigated and settled. (Simpson vs. Hawkins, 1 Dana, 303; Taylor vs. Lyon, 2 Dana, 279.)
The evidence does not satisfy us that the alleged defect in the title has been cured by time, or that the possession, although continued for almost half a century, would bar the right of the wives of Brown and Perry, or the right of their heirs-a.t-law, if they be dead. The testimony in the cause does not, however, create a presumption of their death. Although they have not been heard of by their relations in this state for many years, yet as they resided in another state at the time the deed was *227 executed by their husbands, their friends or relations where they then resided may have heard of them frequently. But as the appellee will have to amend his pleadings, and make them parties, and require them to assert their right to the land, if they intend to do it, the matter will be open for further investigation, so far as they are concerned, and the decision of the point at this time is not material, except for the purpose of showing that the alleged defect in the title has not been disproved, and therefore this court should not direct a dismissal of the supplemental bill, but require it to be amended for the purpose of bringing the parties before the court, from whose claim danger to the purchaser’s possession is apprehended by him.
In the event it should be made to appear that the vendor’s title to any part of the land is defective, and other persons shall, when brought before the court, succeed in establishing their right to it, the purchaser will then be entitled to an abatement of the value of the part so lost, out of the balance of the purchase money which is unpaid; its value to be ascertained by reference to the price of the whole tract, as fixed by the original contract, and by its relative value when compared with the balance of the tract at that time.
Its value, when thus determined, will bear interest from the 1st day of March, 1849, the time when Wickliffe is charged with interest on the unpaid purchase money — from which, however, must be deducted the rent of the land and the value of any waste or deterioration thereof, taking into the estimate any improvements which the purchaser may have made thereon.
As some of the claimants will have to be proceeded against as non-residents, the question occurs, in what manner shall their title be litigated and their claim guarded against, if they fail to appear and assert it by appropriate pleadings, when constructively served with process?
As Wickliffe is in the possession of the land, he has a right, for the purpose of quieting his possession and of perfecting hds title, to bring all claimants, and all persons from whom he apprehends any disturbance at a future period, before the court, by appropriate proceedings, and require them to assert their- *228 title; and upon their failing to do so, he will be entitled to a decree against them, precluding them from its assertion at any subsequent time. But as a judgment against persons constructively summoned, who do not appear, may be subsequently set aside, if such persons, at any time within five years after the rendition of the judgment, appear in court and move to have the action retried, and then assert and establish their title, it will be necessary, even after such a judgment or decree has been rendered, to secure the purchaser against the assertion of the claim within the time allowed by law for that purpose. And to this end the party entitled to the purchase money must, before she can demand its payment, be required to execute to Wickliffe a covenant, with good security, to the effect that she will secure and indemnify him against all loss or damage that he may sustain by reason of the appearance of any of the defendants who have been constructively summoned within the time allowed by law, and the assertion and establishment by them of a right and title to any part of the land purchased by him. And upon the execution of such a covenant, after a judgment has been rendered in favor of Wickliffe to quiet his title and possession, his injunction should be dissolved, and he should be required to pay the balance of the purchase money.
Wherefore, the decree is reversed, and cause remanded for further proceedings not inconsistent with this opinion.