LIZZIE M. CHAPMAN *vs.* FLORENCE E. CHAPMAN.

Suffolk. March 29, 1916. — June 20, 1916.

Present: RUGG, C. J., LORING, BRALEY, DE COURCY, & PIERCE, JJ.

*Probate Court,* Procedure on appeal. *Equity Pleading and Practice,* Master's report. *Marriage and Divorce. Judgment. Jurisdiction,* Submitted to by collusion. *Wrongdoer without Remedy.*

Under R. L. c. 162, § 15, which provides that probate appeals "shall be entered on the same docket with cases in equity, and shall have the same rights as to hearing and determination as such cases," a reference of a probate appeal to an auditor "to hear the parties and their evidence, to find the facts, and report the same to the court" will be treated as a reference to a master and the auditor's report will be treated as a master's report.

Where a woman by collusion with her husband appeared in a suit for divorce brought by him against her in another State in which neither of them had a domicil and allowed a decree for divorce to be obtained against her there for a cause recognized as a cause for divorce in this Commonwealth and which did not occur in this Commonwealth, and accepted a payment of money in full for all payments of alimony, and thereupon her former husband married another woman, and where thereafter the former wife brought a suit for divorce in which the first decree collusively obtained was declared to be valid and binding, and thereupon she married another man, she will not be allowed, upon the death of her former husband, from whom she collusively obtained the divorce, to set up such collusion and the want of jurisdiction of the court that granted the divorce and to claim the rights of a widow in her former husband's estate.

PETITION, filed in the Probate Court for the county of Suffolk on March 27, 1915, alleging that the petitioner was the widow of Hiram T. Chapman, late of Revere, whose estate was in the course of settlement in that court, and praying that she might be allowed a part of the personal estate of the deceased as necessaries for herself and family in addition to the articles allowed her by law as such widow.

In the Probate Court the case was heard by *Grant,* J., who made

the following decree: "It appearing that she is not the widow of said deceased, for the reason that the divorce procured by said deceased from his first wife, Florence Elliott Chapman, in South Dakota, was void because the court which granted said divorce did not have jurisdiction of the parties: It is decreed that said petition be dismissed." The petitioner appealed.

The reference to the so called auditor, referred to in the opinion, was made in the Supreme Judicial Court and was as follows: "And now it is ordered that the above-entitled cause be referred to Franklin T. Hammond, Esq., as auditor, to hear the parties and their evidence, to find the facts, and report the same to the court."

Later the case came on to be heard by *Loring*, J., who by agreement of counsel reported it upon the auditor's report and the exhibits and a stipulation of the parties for determination by the full court.

R. L. c. 162, § 15, referred to in the opinion, is as follows: "Appeals and petitions for appeals shall be entered on the same docket with cases in equity, and shall have the same rights as to hearing and determination as such cases."

*S. Vaughan*, (*J. Noble* with him,) for the petitioner.

*A. W. DeGoosh*, for the respondent.

RUGG, C. J. The officer of court appointed in the case at bar to "hear the parties and their evidence, to find the facts, and report the same to the court," was termed an auditor. The case is a probate appeal. Under R. L. c. 162, § 15, the procedure in probate appeals is according to equity. Cases may be found where in equity an officer called an auditor has been appointed. See, for example, *Quimby* v. *Cook*, 10 Allen, 32. It was said also in *Whitwell* v. *Willard*, 1 Met. 216, at page 218: "The term 'auditor' designates an officer, either at law or in equity, assigned to state the items of debt and credit between parties, and exhibit the balance," and this remark was quoted in *Fisk* v. *Gray*, 100 Mass. 191. But it was held in *Falmouth* v. *Falmouth Water Co.* 180 Mass. 325, 328, that, notwithstanding *Whitwell* v. *Willard*, "In *Holmes* v. *Turner's Falls Co.* 150 Mass. 535, it was intimated by this court that under existing statutes masters are to be appointed in suits in equity where auditors are appointed in actions at law. In our opinion that intimation is correct, and we shall treat the report

made in this case as a master's report." To the same effect in substance, are *Norwood, petitioner,* 183 Mass. 147, 151, and *Gray* v. *Chase,* 184 Mass. 444, 448. See *Stockbridge* v. *Mixer,* 215 Mass. 415, 419. The decisive factor is not a designation given to an appointee of the court, but the nature of the duties imposed on him and the character of the work performed by him. The reference in the case at bar appropriately describes the duties of a master. *Warfield* v. *Adams,* 215 Mass. 506, 519. *Bradley* v. *Borden,* 223 Mass. 575. It would have been more accurate to have called him a master. His report will be treated as the report of a master.

The question presented is whether the appellant or the appellee is the widow of Hiram T. Chapman, deceased, late of Revere in this Commonwealth. The salient facts are these: Hiram, then domiciled in this Commonwealth, was legally married to Florence, the appellee, in Boston in July, 1894. They lived together as husband and wife in Boston until the following October, when they went to Nebraska to visit the mother of Florence, where they remained until January, 1895, during which time difficulties arose between them. In January, 1895, Hiram went to Fargo, North Dakota, and exactly ninety days from the date of his arrival filed in a court of that State a complaint for divorce on the grounds of extreme cruelty. Florence duly appeared and answered, admitting Hiram's residence in North Dakota and her marriage with him. In September, 1895, a divorce was entered on this petition. In December, 1895, Hiram returned to Massachusetts. A year later he married in New York Lizzie, the appellant, then domiciled in Massachusetts. After living at various beaches and spending a winter in Washington and another in Virginia, and the third in Boston, they established a home in Revere, where they have lived ever since until his death in August, 1914. In November, 1902, Florence brought a petition in equity against Hiram in Nebraska, alleging desertion and claiming separate support. Hiram appeared and answered, setting up the North Dakota divorce. Florence replied, alleging that neither she nor Hiram was a resident of North Dakota at that time, that the North Dakota law required as a condition precedent to jurisdiction in an action for divorce that the petitioner should have been a resident in good faith and domiciled in North Dakota for at least ninety days before bringing his peti-

tion, and that as this condition was not complied with the North Dakota decree was null and void. After a contested hearing, the Nebraska court found that the North Dakota divorce was illegal, because neither party was domiciled in that State and both knew that Hiram was there for the purpose of securing a divorce, and that they perpetrated a fraud upon the North Dakota court. That decision was reversed because of error in the admission of evidence and in the character of the judgment awarded. *Chapman* v. *Chapman*, 74 Neb. 388. In March, 1907, Florence moved to dismiss this proceeding "with prejudice," and thereupon the following order was made: "This cause coming on on the motion of the plaintiff to dismiss this case with prejudice, it is by the court ordered that this case be and same hereby is dismissed." During the pendency of these proceedings in Nebraska Hiram brought a libel for divorce against Florence in the Superior Court for this Commonwealth. Personal service was made on her in Nebraska and she appeared and answered. The case was in order for trial in February, 1907, but no trial was had and no proceedings have been taken since. In 1910 Florence brought a petition against Hiram for divorce in the same court in Nebraska where in 1902 she had brought the previous proceeding for separate support. Hiram appeared and set up in defence the North Dakota divorce. In November of that year the Nebraska court entered a decree holding that the North Dakota court had full jurisdiction to grant the divorce, that it was still in full force and effect and that the petition should be dismissed. Nine days later she went through the marriage ceremony with one Hough. They have cohabited as husband and wife since then in South Dakota and she has been known by the name of Hough.

It has been found expressly by the master that Hiram did not go to North Dakota to obtain a divorce for a cause which occurred in Massachusetts while he and Florence resided here. The cause alleged in the North Dakota libel was extreme cruelty, which is established as a cause for divorce by R. L. c. 152, § 1. The master was unable to find that the evidence upon which that divorce was granted would not have warranted the granting of a divorce by the courts of this Commonwealth. An inevitable consequence of this finding is that the North Dakota divorce is not such a divorce as R. L. c. 152, § 35, provides "shall be of no force or effect

in this Commonwealth." *     The earlier part of that section declares that the divorces in other States and countries by courts "having jurisdiction of the cause and of both the parties, shall be valid and effectual in this Commonwealth." This is simply assertive of the validity of certain foreign divorces. The denial of validity of other foreign divorces which follows is not precisely correlative or antithetical. It does not extend to all such divorces by courts not "having jurisdiction of the cause and of both the parties," but to the narrower field where a resident of this Commonwealth resorts to a foreign court to obtain a divorce for a cause which occurred while both spouses resided here, or which is not recognized as a cause by our laws. Manifestly this negation is not so comprehensive as the positive declaration of the earlier part of the section.

On the present findings a case is presented where the parties, being residents of Massachusetts and not domiciled in the foreign State, go there for the purpose of procuring a divorce for a cause recognized as a cause by the law of this Commonwealth but which did not occur here during the period of their residence within the State. This is a state of facts not within the scope of the words of R. L. c. 152, § 35. The Commonwealth has not intervened by legislation to declare a governing public policy, as it had in *Andrews* v: *Andrews*, 176 Mass. 92. The case, therefore, must be considered and decided on general principle concerning the marriage relation.

The pivotal question in many, perhaps in most, cases would be whether the foreign court obtained "jurisdiction of the cause and of both the parties." If it did not, then it could not sever the marriage relation. This was the ground of decision in *Andrews* v. *Andrews*, 188 U. S. 14, 32. The case at bar is different from *Andrews* v. *Andrews*, 176 Mass. 92, affirmed in 188 U. S. 14, 32, in that there the cause of divorce set forth in the South Dakota record was one

---

* Section 35. "A divorce decreed in another State or country according to the laws thereof by a court having jurisdiction of the cause and of both the parties, shall be valid and effectual in this Commonwealth; but if an inhabitant of this Commonwealth goes into another State or country to obtain a divorce for a cause which occurred here while the parties resided here, or for a cause which would not authorize a divorce by the laws of this Commonwealth, a divorce so obtained shall be of no force or effect in this Commonwealth."

for which divorce could not be granted in Massachusetts. The State had intervened and declared all such divorces null and void in this Commonwealth. Here the cause set forth in the North Dakota record is one for which divorce is allowed in this Commonwealth. This is the converse of *Andrews* v. *Andrews*. Florence does not get "the benefit of" the intervention of the Commonwealth by legislation "irrespective of any merits of her own." 176 Mass. 96. She must stand on the strength of her own case, because, as has been pointed out, the legislative declaration of policy does not reach to these facts.

The master has found that the court of North Dakota had no jurisdiction of the parties and the cause. The subsidiary facts appear to warrant this finding. *Dickinson* v. *Dickinson*, 167 Mass. 474, 477. The evidence is not all reported and this finding must be accepted as final. He also has found that Florence had acquired no domicil in Nebraska and that the decree of the court of that State entered in the 1910 proceeding for divorce instituted by her, she having no domicil there, was not within the jurisdiction of that court, *Haddock* v. *Haddock*, 201 U. S. 562, 571, so as to render applicable to it the doctrine of *res judicata* within *Hood* v. *Hood*, 110 Mass. 463. There is the further finding that that decree was not entered after a trial on the merits of the case and that hence under *Foye* v. *Patch*, 132 Mass. 105, 110, it is not conclusive. No finding has been made as to the effect of the separate support decree on the action begun in Nebraska in 1902. For reasons to be stated it is not necessary to consider the exact juridical effect of these several proceedings and the master's findings thereon.

Florence urges that the questions of the jurisdiction of the Nebraska and North Dakota courts are the only ones presented by the strict logic of the record and the law. But there is a preliminary question which affects her own status in the present proceeding and which arises out of her conduct touching these various earlier proceedings. She appeared and attempted to give jurisdiction to the North Dakota court. She colluded with Hiram to get that divorce and was paid $2,500, which she accepted in full of all claims for alimony which she had against Hiram. While the master says that no evidence was offered as to the consideration given by Hiram to Florence for the entry of the decree dismissing the separate support case begun in 1902 in Nebraska, he

finds that "the inference is irresistible that some consideration was paid." It does not appear whether she was paid anything in connection with the final disposition of the last litigation in Nebraska, started in 1910, on the face of which the North Dakota divorce was declared to be valid and binding. At all events, she speedily acted on the assumption that all doubt as to the absolute and complete severance of her marriage with Hiram was put at rest. Her marriage to Hough was the most conclusive assertion possible to this effect.

The person who now contends that she is the widow of Hiram collusively participated in a form of divorce proceedings which has terminated in his favor, has instituted two attacks upon its validity in each of which he has taken part and both of which in form have terminated by a decision in favor of the validity of that divorce; she has been paid a considerable sum of money on the theory of ending her financial interest in Hiram, and she has declared in favor of the validity of that divorce by the most positive act of which such matters are susceptible.

These facts bring the case within the authority of *Loud* v. *Loud,* 129 Mass. 14. In that case a husband who had been married and was domiciled in Massachusetts left his wife here and went to Maine, where he straightway filed a libel for divorce. The wife appeared and later withdrew her opposition upon being paid a substantial sum of money. A divorce was granted. The husband married again and the first wife brought against him a libel for divorce grounded on the cohabitation incident to this second marriage. It was not found that the husband went to Maine to obtain a divorce in violation of the terms of the statute now found in R. L. c. 152, § 35. It was said by Chief Justice Gray (pages 18, 19): "The conclusive answer to this libel is, that the wife not only appeared in the suit brought by the husband, but that she afterwards executed a release, reciting the divorce therein obtained by him, and for a pecuniary consideration discharging all her claims upon him or his estate. Having done this, she cannot treat his subsequent marriage and cohabitation with another woman as a violation of his marital obligations to herself. The defence is allowed, not upon the ground of a strict estoppel, but because her own conduct amounts to a connivance at, or acquiescence in, his subsequent marriage. *Kirrigan* v. *Kirrigan,* 2 Mc-

Carter, 146. *Palmer* v. *Palmer*, 1 Sw. & Tr. 551. *Boulting* v. *Boulting*, 3 Sw. & Tr. 329, 335. *Gipps* v. *Gipps*, 3 Sw. & Tr. 116, and 11 H. L. Cas. 1. *Pierce* v. *Pierce*, 3 Pick. 299."

Where one party to the marriage has connived at the procurement of a divorce by the other in another jurisdiction, which is not declared void here by our statute, has subsequently invoked voluntarily the jurisdiction of the courts of another State in which the other party has appeared and two decrees have been entered, the effect of which is to declare the divorce valid, that spouse cannot be heard for his own advantage to question the jurisdiction of the courts to enter a judgment which has barred his rights.

Where a party has invoked the jurisdiction of a court and the other party has voluntarily appeared and submitted thereto, it is not consonant with ordinary conceptions of justice to countenance an attempt at repudiation of that jurisdiction, especially when the attempt would involve the receiving of considerable sums of money without consideration, the confession of bigamy and the unsettlement of other domestic relations presumably entered upon in innocent reliance upon the jurisdiction of such court. Since the Nebraska judgments were obtained at the instance of Florence, and the North Dakota divorce by her collusion, she "has no right to complain of the consequences which might naturally be expected to follow." *Palmer* v. *Palmer*, 1 Sw. & Tr. 551, 553.

It is not necessary to determine to what extent, if at all, these proceedings in Nebraska and North Dakota would affect the rights of other persons not parties to them. We go no further than to say that under these circumstances the appellee cannot be heard to assert that she is the widow of Hiram. This is not on the ground of strict estoppel, but because she has connived at another marriage by him and has entered into a marriage relation herself which would be a crime without the severance of the marriage with Hiram. This principle is closely analogous to that applied in *Brigham, petitioner*, 176 Mass. 223, and *Ewald* v. *Ewald*, 219 Mass. 111.

This result is supported by decisions in many other jurisdictions, though the grounds upon which they are put are not identical in all the cases, and perhaps are not such in all instances as we should adopt. Collectively they disclose a strong disposition on the part of courts not to aid one in the position of this appellee. *Matter of Swales*, 60 App. Div. (N. Y.) 599, 602, affirmed in 172 N. Y.

651. *Davis* v. *Davis,* 61 Maine, 395. *In re Ellis,* 55 Minn. 401, 413. *Marvin* v. *Foster,* 61 Minn. 154, 160. *Richardson's estate,* 132 Penn. St. 292. *Mohler* v. *Shank,* 93 Iowa, 273, 280. *Karren* v. *Karren,* 25 Utah, 87, 93. *Gans* v. *Gans,* 7 Buch. 309, 312. *Guggenheim* v. *Wahl,* 203 N. Y. 390, 397. *Kinnear* v. *Kinnear,* 45 N. Y. 535. *Arthur* v. *Israel,* 15 Col. 147. *Stephens* v. *Stephens,* 51 Ind. 542. *Bourne* v. *Simpson,* 9 B. Mon. 454. *Richeson* v. *Simmons,* 47 Mo. 20. *Zoellner* v. *Zoellner,* 46 Mich. 511, 514. *Robinson* v. *Robinson,* 77 Wash. 663. *Bledsoe* v..*Leaman,* 77 Kans. 679. *Sedlak* v. *Sedlak,* 14 Ore. 540. *Bruguiere* v. *Bruguiere,* 172 Cal. 199.

*Decree of Probate Court reversed.*