STANLEY W. DENNIS *vs.* ANNA DENNIS.

Middlesex. November 5, 1957. — February 12, 1958.

Present: WILKINS, C.J., RONAN, SPALDING, COUNIHAN, & WHITTEMORE, JJ.

*Divorce*, Vacation of decree. *Estoppel.*

A woman as libellee in a divorce proceeding was barred from obtaining a vacation of a decree of divorce on the grounds that her husband as libellant had obtained the decree by perpetrating a fraud on the court respecting essential jurisdictional facts and that it had had no jurisdiction, where it appeared that she had answered in the proceeding and had been present and represented by counsel at the hearing therein but had refrained from contesting or participating in the hearing, and had obtained in the proceeding benefits for the parties' son, and that after the divorce the libellant had married another woman and had died; and it was immaterial in the circumstances that the libellee relied on a promise made by the libellant after the divorce that he would establish a trust fund for the maintenance of the son.

LIBEL for divorce, filed in the Probate Court for the county of Middlesex on April 3, 1946.

A petition by the libellee, Anna Dennis, to vacate a decree of divorce obtained by the libellant was filed on September 16, 1955, and was dismissed by *Leggat*, J. She appealed.

*Melvin J. Levine*, for the petitioner.

*Edward R. Bonitz*, (*Sidney L. Mitchell* of New York & *James J. Curley* with him,) for the appellee.

WHITTEMORE, J. This is an appeal from an order of the Probate Court for Middlesex County which dismissed the petition of a libellee in prior divorce proceedings in that court to vacate the divorce decree. The grounds for relief alleged in the petition were fraud on the court and lack of jurisdiction.

There is a report of material facts and the evidence is also before us. The judge found, appropriately, the facts stated in the following paragraphs.

The divorce decree became absolute on May 12, 1947. The libellant had died on June 17, 1954, at Bay Shore, Long Island, New York, leaving a will, which was admitted to probate there and which made no provision for the petitioner nor for the child of the marriage. The petitioner filed a notice of election to waive the provisions of the will and to claim her interest in the estate as the surviving widow. The executrix, whom the libellant had married in 1952, moved to strike the notice. The proceedings in New York awaited the outcome of these proceedings, which are contested by the executrix. The executrix filed in the Probate Court a motion to dismiss the petition for revocation and has filed a brief as appellee.

The libel for divorce had alleged marriage in New York city on December 28, 1934, and life together in New York thereafter and never in Massachusetts, that thereafter the petitioner deserted the libellant, and that the libellant had resided in Wakefield, Massachusetts, for more than five years next prior to the filing of the libel. The petitioner was duly served and by an attorney filed an answer denying the desertion and alleging that the libellant had deserted her. The libellant never in fact lived in Massachusetts, misrepresented the fact, and committed perjury at the hearing on November 12, 1946. The petitioner was present in court and represented by counsel at the hearing on November 12, 1946, at which the libellant testified that during the five

years next preceding the filing of the libel, dated March 2, 1946, he had lived at 14 Armory Street, Wakefield. Neither the petitioner nor her counsel took any part in the hearing. Upon the record there appeared to be jurisdiction to grant a divorce. The decree nisi, entered November 12, 1946, awarded the care and custody of the minor child to the petitioner and ordered the libellant to pay $20 a month for the support of the child. Fifteen hundred dollars was deposited with the attorney for the petitioner to secure the payments. The petitioner relied upon the libellant's promise, made subsequent to the decree absolute of divorce, that he would establish a trust fund for the maintenance of the son, a victim of multiple sclerosis.

The parties had lived together only in the State of New York. The libellant deserted the petitioner in 1939. She found him in 1941 with the aid of a detective. At that time he was living in Brooklyn, New York, as husband and wife, with the executrix. He was then arrested on the complaint of the petitioner on process of the Domestic Relations Court of New York city and ordered to pay support for the child. In May, 1942, the libellant moved to Bay Shore, Long Island, New York, and was employed by Fairchild Engine and Airplane Company at Farmingdale, Long Island. On May 11, 1943, he was inducted into the United States Army from Brooklyn, New York, and went overseas. The petitioner received an allotment during his army service. He was discharged from the army at Fort Dix, New Jersey, on December 28, 1945, and returned to Bay Shore, Long Island, New York. From 1942 to 1946 the libellant's mother lived at 14 Armory Street, Wakefield, and the libellant visited her there just before he went overseas and again in March, 1946, when the libel was signed. "The State of New York has given full faith and credit to . . . [the divorce] decree in recognizing . . . [the executrix] as . . . [the libellant's] widow." The petitioner did nothing to revoke the decree until after the death of the libellant.

The judge also found that the petitioner was never in Massachusetts until the time of the hearing on the libel

"and knew nothing of the libellant's whereabouts from 1941 to that time, except that he was in the army." We think this finding is somewhat more favorable to the petitioner than her own testimony warrants, and that it can reasonably be concluded, as the appellee contends, that the petitioner knew that her husband had an abode in Brooklyn in 1943 when he was drafted there and that she learned from her niece who lived in Bay Shore, Long Island, soon after the husband's discharge from the army in 1945, that he was living in Bay Shore, Long Island. However we do not think there was any evidence which required a finding that the petitioner consciously withheld information which she knew to be material. The result here is not affected by the absence of such a finding, and as it was not made by the judge who heard and saw the witnesses, we ascribe no bad faith to the petitioner in not disclosing facts which were material.

The decree of divorce, although beyond the court's power for want of statutory jurisdiction, was nevertheless binding on the parties until and unless reversed on direct attack. See *Old Colony Trust Co.* v. *Porter,* 324 Mass. 581, 586–587; *Sherrer* v. *Sherrer,* 334 U. S. 343; *Coe* v. *Coe,* 334 U. S. 378; *Rubinstein* v. *Rubinstein,* 324 Mass. 340, 342; *Royal* v. *Royal,* 324 Mass. 613, 618.

The principles to be applied when direct attack is instituted are stated and exemplified in our decisions. The petitioner's participation in the proceedings, without more, is not a bar to relief. *Bergeron* v. *Bergeron,* 287 Mass. 524, 526. The issue can be raised "at any stage of the proceedings. No one party nor all parties can by their conduct confer jurisdiction over a cause on a court which has no jurisdiction" — *Ibid.,* 526. But the happening of events after the entry of a decree with the sufferance or coöperation of the petitioner may be a bar to relief. A number of our decisions have recognized that remarriage of the parties or either of them in reliance on the decree of divorce, so that status and rights of other persons are affected, may be a bar to the vacation of the decree. The principle has been applied in several cases in which a foreign decree of divorce

obtained in proceedings in which both husband and wife participated was attacked in subsequent proceedings in this Commonwealth. These cases were decided while it was supposed that constitutional requirements of full faith and credit did not prevent collateral attack on a foreign decree of divorce in the courts of the jurisdiction of original domicil (see *Andrews* v. *Andrews*, 188 U. S. 14; *Sherrer* v. *Sherrer*, 334 U. S. 343), so that this court acted as with power to determine the effect of the decree in this State equal to that which it would have had in the case of a domestic decree.

The cases we refer to are *Loud* v. *Loud*, 129 Mass. 14, *Chapman* v. *Chapman*, 224 Mass. 427, and *Langewald* v. *Langewald*, 234 Mass. 269. In the *Langewald* case the husband had obtained a divorce in the State of Wyoming, the wife appearing there, and the husband had remarried. In subsequent divorce proceedings here, brought by the wife, for adultery, we held that the Wyoming decree was without force in this Commonwealth, but ordered the libel dismissed, saying (page 272): "The case, then, is that the husband, a resident here, having gone out of this Commonwealth for the purpose of obtaining a divorce in violation of our statute, the wife made an agreement with him whereby she appeared and remained in the foreign court as a party to the proceeding, adjusted her financial controversy with him on the footing that he obtain the divorce and she the custody of their child upon payment of a stipulated sum of money to her, and that she gave a receipt in form required for filing with the papers in the court, whereupon a final order for divorce could be and was entered. Having done this, the wife, as was said in *Loud* v. *Loud*, 129 Mass. 14, 19, 'cannot treat' the husband's 'subsequent marriage and cohabitation with another woman as a violation of his marital obligations to herself. The defence is allowed [to the husband], not upon the ground of a strict estoppel, but because her own conduct amounts to a connivance at, or acquiescence in, his subsequent marriage.' " In *Chapman* v. *Chapman*, 224 Mass. 427, after a North Dakota divorce in which the wife participated, the husband remarried. Thereafter the wife insti-

tuted proceedings in Nebraska which resulted in decrees declaring the divorce valid and the wife then also took another spouse. Following the husband's death his second wife brought a petition in the Probate Court asking as the widow an allowance for necessaries. This court reversed the decree which had dismissed that petition. While the court in the opinion spoke of the connivance and collusion of the first wife in the North Dakota divorce, we think that the basic principle is stated in the following language (page 434): "Where a party has invoked the jurisdiction of a court and the other party has voluntarily appeared and submitted thereto, it is not consonant with ordinary conceptions of justice to countenance an attempt at repudiation of that jurisdiction, especially when the attempt would involve the receiving of considerable sums of money without consideration, the confession of bigamy and the unsettlement of other domestic relations presumably entered upon in innocent reliance upon the jurisdiction of such court."

We do not think it is necessary to find that the petitioner consciously joined in an imposition on the court. It is enough that, not having been imposed on by her husband in respect of her appearance and the jurisdiction of the court (see *Sampson* v. *Sampson*, 223 Mass. 451), she appeared and elected not to contest the divorce, and sought and obtained benefits for her son under it, and that an irrevocable change of position of a third party thereafter occurred in presumed reliance thereon. There is no basis for concluding that the second wife had knowledge of the defect in the divorce decree so that there is an offsetting equity to be considered.

We do not think it affects the result that, as the judge found, the petitioner relied upon the libellant's promise, after the decree absolute, that he would establish a trust fund for the maintenance of the son. We take it that reliance in the context means that, believing her son would be provided for, the petitioner had no occasion to consider whether she should try to improve her position in respect of the assets of the libellant as a means of assuring her son's

future. It does not appear that the promise of the libellant was not made in good faith when made, or that it was made with intent to deter the petitioner from acting to upset the decree. In the circumstances nothing in this finding speaks against significance of the petitioner's acquiescence in the granting of the decree, and in the libellant's status as a divorced person.

Whatever the rights of persons not parties to show the invalidity of the decree in collateral proceedings (see *Old Colony Trust Co.* v. *Porter,* 324 Mass. 581, 587–589, 593) it is clear, we think, that the application of the equitable principles heretofore stated by this court bars the relief sought. See *Trivanovitch* v. *Hobby,* 219 Fed. (2d) 762. Compare *Edson* v. *Edson,* 108 Mass. 590; *Sampson* v. *Sampson,* 223 Mass. 451.

We do not need to rule on the effect of lapse of time without any material change of positions in the meantime. See *Brigham, petitioner,* 176 Mass. 223; *Holbrook* v. *Holbrook,* 114 Mass. 568, 570; *Meyer* v. *Meyer,* 326 Mass. 491, 493. We also need not decide whether the death of a party to the decree necessarily bars the granting of a petition to vacate. See *Brigham, petitioner,* 176 Mass. 223, 226–227; *Rawson* v. *Rawson,* 156 Mass. 578. The husband's death is, of course, a relevant circumstance in determining the significance of the change of status of the woman who may have supposed she had become his wife.

We see no error in the decree on the facts found by the judge, or as we find them on the evidence. See *Heard* v. *Heard,* 323 Mass. 357, 361.

The entry therefore is

*Decree affirmed.*