ERASMUS PLIMPTON *v.* THE TOWN OF SOMERSET,

*Constitutional Law. Jury trial. Action. Towns. Highway.*

Any law which destroys or materially impairs the right of trial by jury according to the course of the common law, in cases proper for the cognizance of a jury, is contrary to the twelfth article of the Bill of Rights, and the thirty-first section of the constitution of Vermont.

These constitutional provisions apply to all controversies fit to be tried by a jury, according to the rules of the common law, notwithstanding the particular right for the violation of which the action is brought, did not exist by common law, but was created by a statute passed subsequent to the adoption of the constitution.

An action on the case to recover damages of a town, occasioned by the insufficiency of a highway, is of that character.

The act of 1856, providing for a compulsory reference of suits at law, and which makes the referee's report *prima facie* evidence of the facts therein reported, in case either party claims a trial by jury, does, so far as it applies to actions suitable for trial by jury according to the course of the common law, impair the right to such a jury trial as is guaranteed by the constitution of Vermont, and it is therefore void.

CASE to recover damages for injuries sustained by reason of the insufficiency of a highway in the town of Somerset.

At the April Term, 1857, the plaintiff moved that the cause be referred to commissioners in conformity with the law of 1856, entitled " an act providing for the reference of actions in the county court." (Acts of 1856, No. 6, p. 10)*. The defendants

* Which is as follows :

SEC. 1. The county court may, in their discretion, refer any civil action pending therein to one or more commisioners to be appointed by the court.

SEC. 2. When an action is so referred, (otherwise than on the agreement of the parties, as already provided by law,) it shall be the duty of the commissioner or commissioners to try the questions raised in the case, and with their decision thereon, report to the court such facts as they judge to be proved.

SEC. 3. On such report the court shall render such judgment as is warranted by the facts reported, unless either of the parties shall, at the time at which the report is made, elect to try the case before a jury.

SEC. 4. Such party shall furnish a statement in writing of the material particulars in which he expects to change the result of the report, and at the trial the report shall be *prima facie* eviderce of the facts.

SEC. 5. The verdict shall be specifically on the facts put in issue by the statement above mentioned, and the court shall render such judgment thereon as is warranted by law on the facts found.

SEC. 6. The judgment so rendered, either with or without trial by jury, shall be final and conclusive between the parties, and shall not be subject to review.

objected to such reference, but the court,—UNDERWOOD, J., presiding, — overruled the objection and referred the case to commissioners, to which the defendant excepted.

At the April Term, 1858, the cause came on for trial by jury, upon the plea of the general issue, and the plaintiff offered in support of the issue on his part the report of the commissioners which had been filed and which was in his favor.

To the admission of this report as testimony the defendants objected, on the ground that the case had been referred to the commissioners against the objection of the defendants, and that the statute of 1856, under which the reference was made, was contrary to the constitution of this State.

The county court,—REDFIELD, Ch. J., presiding,—*pro forma* sustained the objection and rejected the evidence, whereupon the plaintiff submitted to a verdict and judgment for the defendants, and excepted to such decision of the court, under an agreement with the defendants that it should be made a rule of the supreme court in this case, that if that court should be of the opinion that the report of the commissioners should not have been admitted in evidence on the trial of the cause, they should reverse the judgment of the county court *pro forma*, and remand the cause to be tried upon its general merits.

*Butler & Wheeler* and *Stoughton & Grant*, for the plaintiff.

Is the reference law of 1856 constitutional ?

The law provides that the county court may, in their discretion, refer any civil action pending therein to one or more commissioners to be appointed by the court.

The 9th article of the amendments to the constitution of the United States only applies to the federal courts ; *Hutchinson* v. *Bishop*, 5 Vt. 186.

The same doctrine is recognized by numerous cases in New York and in other States.

The question must, therefore, be determined under the constitution of Vermont, and we propose to consider the reference law first, independently of its provisions for a jury trial.

Section 12 of the declaration of rights reads thus :

"When an issue of fact *proper for the cognizance of a jury* is

joined in a court of law, the parties *have* a right to trial by jury which ought to be held sacred."

Section 31 of the constitution reads thus:

" Trials of issues proper for the cognizance of a jury in the supreme or county courts, shall be by jury except when parties otherwise agree."

The constitution was adopted in 1793, and the right of action for such injuries as the plaintiff has sued for was given by statute March 3, 1797; Slade's Stat., page 432, sec. 13.

This is a remedy created and given to the plaintiff by the statute, wholly unknown to the common law.

Will it be contended that the legislature could not, at the time they created the right, have provided for a trial by some other mode than by a jury ?   At the adoption of the constitution no such right of action existed, and the rights secured by that article are only such as existed at the time of its adoption and such as had been before enjoyed.   Then it is clear that the legislature had the right to provide some other mode of settling damages than by a jury, and if they possessed that right when they gave the remedy, they may exercise it now

The legislation and jurisprudence of the State since the adoption of the constitution is based upon the construction we contend for, that is, that the trial by jury was guaranteed in all cases proper for the cognizance of a jury *then* known to the common law. ✦

The right of the legislature to give a new remedy for the enforcement of a common law right, *and take away the right of jury trial,* has been sustained by the legislation and jurisprudence of this State.

Thus in 1797 the legislature extended the action of account to book accounts, and the settlement of every conceivable matter of 'deal in that action without a jury is sanctioned by the courts, and in every instance a common law right and remedy existed at the date of the adoption of the constitution.

In the settlement of estates before probate courts, divorce cases, damages for lands taken for highway, sites for school houses, lands for railroad purposes, the rights and remedies are both given by statute, and are settled without the intervention of

a jury, and still it never has occurred to the profession that this was a violation of the constitution.

We say, therefore, that the proper construction of the constitution, sanctioned by our legislation and jurisprudence, is that it only referred to pre-existing rights at the date of its adoption "proper for the cognizance of a jury," and that it was not intended to extend to new remedies given to enforce common law rights, or to cases where new liabilities were created not known to the common law.

This view of the subject leaves the legislature at liberty to create new liabilities and remedies, upon such terms as they may see fit to impose, and having created the liability they have clearly the right to constitute the tribunal to enforce the liability they have thus created.

This brings us to another question, and that is, does the law under consideration take away the right to a trial by jury? We say it does not. The law provides for a report of referees before a jury.

Now this is all well enough so far. No doubt the legislature may provide that the parties, to entitle them to a trial by jury, shall submit to many things which might be an infraction of their *common* law rights.

The common law would not permit the parties to be witnesses, but the statute compels them to submit to that innovation upon their *common* law rights.

The common law would not permit the testimony of any interested witnesses to go to the jury. The statute provides that such testimony shall be received.

The *common* law would compel the production of witnesses upon the stand to be confronted by other witnesses; but by our statute, as it stood for a long time, cases might be tried by a jury upon *ex parte* depositions, and, as the statute law now stands, witnesses need not be produced upon the stand under certain circumstances.

The common law would not permit the jury to go abroad to examine localities and to carry back into the jury box impressions relating to the case; but by our statute it is in the power of the court to order such a state of things; and yet it never

occurred to the profession that these innovations upon the common law were infractions of the constitutional rights of parties; nor do we believe that the clause in the United States constitution, which by judicial determination applies exclusively to jury trials in common law proceedings, ever has or will receive a construction which prohibits congress from making modifications and changes of the common law rules of evidence; and indeed they go so far in the trial of jury cases in the United States courts or to be governed by State legislation touching such changes. The law provides for a reference and a report, and in case either party is dissatisfied, a jury trial.

But the law provides further that in case either party elects to have the case tried by a jury the report shall be *prima facie* evidence of the facts.

Does this provision invade the parties' constitutional rights?

The party against whom the report is, is still at liberty to make every issue in the case he could before the report was made, and he is at liberty to produce every witness used before the referees, and as many other as he pleases.

But it may be said that the law makes the deductions of the commissioners from facts sworn to before them *evidence*, instead of the facts themselves.

Suppose the legislature should enact that hereafter witnesses should be at liberty to state what inference they drew from conversations they heard relating to matter under judicial investigation:

Suppose they should enact that all declarations should be *prima facie* evidence of the facts alleged, or that pleas to declarations should be so treated:

Or, suppose they should require every plaintiff, before sueing out a writ, to satisfy the clerk that he had a good cause of action, by producing witnesses before him, and should require him to file a report made by the clerk, and that such report should be *prima facie* evidence of the facts it contained.

Now all such legislation might, in our judgment, be poorly calculated to facilitate justice and might have a strong tendency to mislead a jury. Still, the jury trial would be left, and that answers the requirements of the constitution, and if we are right

in this view of the case, the constitutional right to a jury trial is not in any case violated by the reference law under consideration.

*J. D. Bradley* and *S. P. Flagg*, for the defendants.

1. The act of 1856, under and by virtue of which the reference was ordered, was invalid, unconstitutional and void.

By the 12th article of the Bill of Rights it is declared, "that when any issue in fact proper for the cognizance of a jury is joined in a court, the parties have a right of trial by jury, which ought to be held sacred."

The right of trial by jury of matters of fact, being secured by the constitution, it cannot be taken away or *impaired* by any act of the legislature.

The constitution secures the right in full with all its privileges and advantages as it existed at the time of the adoption of the constitution, and consequently any act which in the slightest degree *impairs*, *abridges* or *lessens* this right, is in direct conflict with the constitution and consequently is void.

The act of 1856 *impairs* this right.

2. The act does not require the referees or commissioners to be sworn to a faithful discharge of their duty, and yet it declares that the facts certified by them shall be received by the jury as *prima facie* proof of those facts.

The jury, whose province it is to pass upon all facts in the case, are compelled to receive, instead of the facts as they come directly from the witnesses, the *conclusions* and *opinions* of these men as to those facts, and these men not even under oath. And the jury are compelled to believe the matters certified by the referees, unless the same shall be overcome by the defendant's proof.

Is this the jury trial contemplated by the constitution?

The act was the result of a scheme to *evade* the constitution, and so palpable was its infringement of the constitution that the next succeeding legislature blotted it from the statute book.

ALDIS, J.   The main question in this case is as to the constitutionality of the reference act of 1856. The act was repealed in 1857, and hence the question which here arises is but of little practical importance, so far as the application of that law is con-

cerned. But the principle involved tests the constitutional power of the legislature to enact such or any similar law affecting the trial by jury. In this aspect it becomes an important question. As the case has been twice argued and has received the attention of all the judges who compose the court, we have concluded to decide it at this time, although the opinions of all the judges do not concur in the result.

The twelfth article of the Bill of Rights provides " that when any issue in fact, proper for the cognizance of a jury, is joined in a court of law, the parties have a right to trial by jury, which ought to be held sacred."

The 31st section of the constitution contains, in substance, the same provision.

In the first constitution of this State, adopted July 2, 1777, the 13th section of the Bill of Rights is " That in controversies respecting property, and in suits between man and man, the parties have a right to trial by jury, which ought to be held sacred." The change from this form of expression to the one used in the present constitution, which was adopted in 1793, and which was obviously intended to define and restrict the loose and very general language of the old constitution, and to prevent its being misconstrued so as to make jury trials of universal application, indicates the effect exerted upon the minds of our jurists and legislators by the discussion of this subject of the use of jury trials in civil cases which ensued upon the adoption of the federal constitution. That instrument contained no provision securing the right of trial by jury in civil cases, and the omission led to grave opposition to its adoption. A thorough discussion of the subject ensued, in which the first jurists and statesmen of the land participated, and which led to a just and discriminating sense of the true value and proper use of the trial by jury. The extent of its use was found to be different in different States ; its proper extent was generally conceded to be that which was according to the course of the common law, not including cases in the courts of chancery, admiralty and probate. Hence arose the ninth article of the amendments to the constitution of the United States proposed by congress in 1789 ; and hence also the peculiar modification of phraseology in our present constitu-

19

tion, viz : "when any issue in fact *proper for the cognizance of a jury*," etc.

The language of our first constitution, and which has ever since been retained, that the trial by jury " *ought to be held sacred*," shows vividly the strong attachment of the people of this State to this mode of trial, and their implicit belief that it is essential to the honest and enlightened administration of justice. At the time of the adoption of the federal and State constitutions, this feeling was a very strong one with the American people. Perhaps the then recent publication of Judge BLACKSTONE's Commentaries, in which he bestows a most eloquent and exalted panegyric on jury trials, a work which was then beginning to be well known and highly prized by the American bar, and to influence the public mind as to matters affecting the administration of justice, may have aided in producing this public sentiment. However that may be, there has always been a strong inclination both with the bench and bar, as well as with the people, to maintain the integrity of the trial by jury. There have been exceptions to this general opinion among judges and lawyers. Some have been led by their experience and reflection to doubt the value of jury trials, at least in certain classes of cases, and have, therefore, inclined to construe with less strictness this provision of the constitution. We think, however, that it should be construed in the spirit with which it was enacted, and that any restriction of its present application should come, not through legislation and judicial construction, but from the direct, constitutional and considerate action of the people.

The general rule of construction in reference to this provision of the constitution is, that any act which destroys or materially impairs the right of trial by jury according to the course of the common law, in cases proper for the cognizance of a jury, is unconstitutional. The chancery, admiralty and probate courts are not held to be, strictly speaking, courts of common law, their jurisdiction and practice being derived from and conformed to the civil or the canon law, and hence no jury intervenes in the trial of cases in those courts.

Even in common law courts there are many cases in which by the custom of the common law no jury trials can be had, as in

account and its derivative, book account. Proceedings by trustee process have been held to be of an equitable nature, and not to be tried by jury; *Huntington* v. *Bishop*, 5 Vt. 86. So proceedings in laying out highways and in assessing damages for property taken for a public use are not triable by jury; 19 Vt. 478; 3 Paige 45. So where the issue is tried by the court the assessment of damages need not be by a jury; 21 Vt. 68.

So the trial of petty offences by magistrates is constitutional; *State* v. *Conlin*, 27 Vt. 318.

In all these and other similar cases which might be noted, *the immemorial practice* of proceeding to trial without a jury, in the common law courts of England and of this country, has been held conclusive to show that they are not within the terms of the constitution, "proper for the cognizance of a jury," and were not intended to be therein included. The reason why some, at least, of these proceedings are made exceptions to the general rule of trial by jury is quite obvious, as in account, and in cases where a view of the premises is necessary.

The case at bar is an action to recover damages for an injury occasioned by another's negligence, an action of trespass on the case, and by the course of the common law is triable by jury. It comes within the terms of the constitution, being a case "proper for the cognizance of a jury."

It is said, however, that as towns have been made liable to keep roads in repair and to pay damages for injuries occasioned by their neglect, by statute, since the adoption of the constitution, this is a statutory right to which the constitutional inhibition does not apply, and that for rights thus growing out of statutes subsequent to the adoption of the constitution, the legislature may establish such remedies and such modes of trial as they see fit.

We think this position untenable. The constitution was intended to provide for the future as well as the past, to protect the rights of the people by every safeguard which their wisdom and experience then approved, whether those rights then existed by the rules of the common law, or might from time to time arise out of subsequent legislation. All the rights, whether then or thereafter arising, which would properly fall into those classes of

rights to which by the course of the common law the trial by jury was secured, were intended to be embraced within this article. Hence it is not *the time* when the violated right first had its existence, nor whether the statute which gives rise to it was adopted before or after the constitution, that we are to regard as the criterion of the extent of this provision of the constitution; but it is the nature of the controversy between the parties, and its fitness to be tried by a jury according to the rules of the common law that must decide the question.

The statutory rights and liabilities of individuals, of public officers, of corporations and quasi corporations are continually changing, but the sources of legal wrongs and the controversies in regard to them, the nature of evidence and the character of human tribunals, ever liable to the same errors and ever in need of the same helps and safeguards to preserve them from error, these remain in substance the same through all time. The framers of the constitution, in their profound knowledge of these subjects and in their large experience, determined that the trial by jury was an all important means of securing truth and justice in the decision of controversies, and intended to secure it for the settlement of all controversies, however and whenever arising, which by their nature and according to the course of the common law, were fit to be submitted to such a tribunal.

The dangerous tendency of the principle of construction, which would authorize the legislature to do away with jury trials in regard to rights founded upon statutes passed since the adoption of the constitution, becomes more apparent when applied to statutes creating offences not known to the common law. Such statutes and the offences which arise under them are of frequent occurrence. But no one can suppose it a reasonable construction of the constitution, that persons accused of such offences should be excepted from the enjoyment of this constitutional right.

Holding this suit therefore, to be one " proper for the cognizance of a jury," we are next led to inquire whether the provisions of the act of 1856 do materially impair the right of trial by jury.

The act provides for a trial by commissioners and for a report of the commissioners stating the facts which they find proved. When this report is made, the court are to render judgment upon

Plimpton *v.* Town of Somerset.

it, unless either of the parties shall elect to have a trial by jury. The party electing to have a jury trial must make a statement in writing of the material particulars in which he expects to change the result of the report. Thereupon a trial by jury may be had, but the statute says, " at the trial the report shall be *prima facie* evidence of the facts." and " the verdict shall be specifically upon the facts put in issue by the statement in writing." It is in this clause that the infringement of the right is alleged to exist. The mere providing of a preliminary trial by commissioners would not of itself impair the right, so long as the party could appeal from their decision, and have a full and fair trial by jury ; *Beers* v. *Beers*, 4 Conn. 535 ; 3 Gray 476.

A trial by jury, within the meaning of the constitution, not only supposes that the controversy between the parties shall be submitted to twelve jurors, but that it shall be submitted to them upon the evidence, that it shall be submitted to them for their minds to weigh the evidence, unaffected by the opinion or judgment of any other tribunal in regard to it. It is to be a *trial*, the hearing of evidence and argument, and the deciding upon them, not the acting upon conclusions which some other tribunal has drawn from the evidence and argument. It is to be a trial by *jury*. The jurors are to hear for themselves, to use their own judgment, and the verdict is to be the result of their deliberation and reflection upon the testimony and argument. If the judgment of some other body upon the same matters is substituted for and is to control the decision of their minds ; their action upon the subject ceases to be a trial and becomes but the mere recording of a verdict made for them by others. If the judgment of another body is so substituted *in part*, the right is impaired to the extent of the substitution. Herein lies the fatal objection to this clause of the statute. By making the judgment of the commissioners *prima facie* evidence, it enables one party to obtain a verdict without any showing whatever in the outset. The jury are bound by the report of the commissioners if no evidence can be had to the contrary. The party in whose favor the report is made starts with an advantage, whilst his antagonist is obliged to carry the weight of an adverse finding from the start. His evidence must not only preponderate over that of his adversary's

but must bear down the force of the report of the commissioners. Practically this would operate as a great advantage to one and a great burden upon the other. The written report of a body of disinterested men, embodying their views upon a subject which they have investigated, will naturally have a material influence upon the minds of others newly called to the same investigation.

In proportion to the respect and confidence which the jurors would feel for the commissioners, would be the bias which they would receive from their report. This would be likely to be considerable even if the law only brought the report with its reasonings and facts to their knowledge. But when the law further requires them to receive it as *prima facie* evidence, controlling their verdict, unless they should be able to find upon weighing the whole evidence, that there was a balance sufficient " to change the result" specifically upon the facts put in issue by the statement of the party objecting to the report, it is obvious that in all doubtful and evenly balanced cases the verdict would follow the report.

The statute seeme to us to so present the decision of the former tribunal before the jury, so limits the statement in writing to the particulars in which the party objecting to the report expects to change the result, and so binds the jury to find a verdict " specifically on the facts put in issue by the statement," that it makes it materially to influence and affect the verdict, and to impair the right which the constitution intended to secure to litigants, viz : that their controversies should be heard and decided upon the evidence by jurors uninfluenced by the judgment of any other tribunal, and acting exclusively upon their own judgments.

The report is *prima facie* evidence of the facts reported. In many cases the defence consists in this, that the plaintiff's evidence fails to make a *prima facie* case. The commissioners may think the evidence of the plaintiff sufficient for that purpose ; if so, their finding of the facts makes a *prima facie* case for the plaintiff. Before the jury the plaintiff is not required to produce his evidence and satisfy them as he did the commissioners ; he rests upon the report. How can the defendant " change the result ?" Does the statute contemplate that he may show what the evidence was before the commissioners, and claim of the jury that it was not

sufficient as *prima facie* evidence? How shall he make this showing; how bring before the jury the appearance and testimony of his adversary's witnesses? We think such was not the intent of the statute. Were it merely a question whether certain given facts amount to *prima facie* proof, that would be easily ascertained and would be indeed only a question of law. But it is a question as to the weight of evidence, and whether the evidence establishes certain facts; and this is to be determined by very many considerations, by how witnesses appear as well as by what they say.

In every view that we can take of this statute and of its practical working, we think it tends directly to introduce into the trial the judgment of the commissioners to that extent that it would materially impair and affect the free and unbiassed exercise of judgment by the jury upon the evidence. This is not " holding the trial by jury sacred." It rather makes it incumbent on the court, in the eloquent language of Judge BLACKSTONE, " to guard with the most jealous circumspection against the introduction of new and arbitrary methods of trial, which, under a variety of plausible pretences, may in time imperceptibly undermine the best preservative of English liberty."

We are aware that a similar statute exists in another State, but we are not aware that the question of its constitutionality has been brought before the courts.

The judgment is, therefore, reversed *pro forma*, and the case remanded for trial, pursuant to the agreement of parties as stated in the exceptions.

. BARRETT, J., non-concurring.