EDWARD O. HOLMES & another *vs.* WILLIAM P. HUNT.

Suffolk. March 16. — May 4, 1877. ENDICOTT & SOULE, JJ., absent.

Section 46 of the Gen. Sts. *c.* 121, making the report of an auditor *primâ facie* evidence, upon such matters as are embraced in the order to him, is constitutional.

Under the Gen. Sts. *c.* 121, § 46, the report of an auditor is *primâ facie* evidence, not only of the result of the accounts, but of the facts or inferences stated in his report, as derived from the evidence before him and involved in the determination of the issues submitted to him, even if they include a finding upon the general question whether the defendant is or is not liable to the plaintiff.

In an action for goods sold and delivered, the fact that the goods were originally charged to a third person on the plaintiff's books is not conclusive against him; and, if the charge is afterwards altered so as to be one against the defendant, testimony of the plaintiff, in explanation thereof, is competent.

In an action for goods sold and delivered, on the issue whether the plaintiff, at the time of the sale, looked to the defendant or to a third person for payment, the

plaintiff was allowed to testify that he did not know the third person at the time; and evidence offered by the defendant, as to the financial reputation of the third person, was excluded. *Held*, that the defendant had no ground of exception.

In an action for goods sold and delivered, on the issue whether the plaintiff looked to the defendant or to a third person for payment, the defendant put in evidence a letter written by the plaintiff, as an admission by him, which did not show on its face the transaction to which, or the person to whom, it related. *Held*, that testimony of the plaintiff was admissible in explanation of the letter.

In an action for goods sold and delivered, on the issue whether the defendant, or a third person, was the contracting party, it appeared that the defendant insured the goods. The defendant was allowed to testify that he charged the amount paid by him for insurance to the third person who paid him for it; but was not allowed to testify that he insured "for whom it might concern," the judge ruling that this could only be shown by the policies of insurance. *Held*, that the defendant had no ground of exception.

In an action for the price of a rice mill for cleaning rice, the defendant's bill of exceptions stated that the defendant contended that there was an implied warranty that the mill was reasonably fit for the purpose of cleaning rice, that the plaintiff put in no evidence that it was fit, except the report of an auditor in his favor; that the defendant called a witness to testify to defects in the mill and its performance; that the plaintiff called a witness in rebuttal, who was permitted to testify, against the defendant's objection, that the mill was properly constructed; that the defendant objected that it was for the plaintiff to show, as part of his case, that the warranty was complied with; that the judge said the evidence was competent and proper, and asked how the plaintiff could know that the defendant was going to put in evidence of the imperfection of the machine, and added that it was part of the defendant's case to show that the work was not well done; that there was no other discussion as to the burden of proof, and the matter was not further alluded to. *Held*, that the bill of exceptions showed that the opinion expressed by the judge was a mere ruling on the competency of the evidence offered by the plaintiff, and the propriety of admitting it at that stage of the case, and not an instruction to the jury upon the burden of proof.

CONTRACT on an account annexed, containing a large number of items, for a rice mill and machinery to be used in connection with it, sold to the defendant, and for labor about the same.

The action, which was brought in this court, was referred to an auditor, " to hear the parties and examine their vouchers and evidence, and to state accounts and make report thereof to the court." The auditor made a report, in which he stated the account, but declined to pass upon the question whether the plaintiffs gave credit to the defendant or to C. S. Hunt & Company, of which firm the defendant was not a member, and whether the defendant was properly chargeable for the account or any part of it. The case was thereupon recommitted to the auditor to find and report whether or not the defendant was indebted to the

plaintiff for any of the items stated in the report, and, if so, to what extent. The auditor made a further report that the defendant was indebted to the plaintiffs in a certain sum, being the amount of certain items set forth in the account before stated.

Before the day on which the case was tried, the defendant moved the court to strike out that portion of the auditor's report wherein the auditor passed upon the liability of the defendant, or to recommit the same to the auditor with instructions, or in some other way to order that the auditor's finding upon the question of liability should not be *primâ facie* evidence with the jury, upon the ground that it was not within the province of the auditor, or the power conferred upon him by the order of the court; and that his finding therein, being read to the jury as *primâ facie* evidence, was an infringement upon the defendant's constitutional right to have the question of his liability determined by a jury. *Colt*, J., ruled otherwise, and the defendant excepted. At the trial, the same judge, in his charge to the jury, gave full instructions as to the effect to be given to the auditor's report as evidence, to which no exception was taken, except as above stated.

It appeared in evidence that certain items of the plaintiffs' account were originally charged to C. S. Hunt & Co., of New Orleans, to whom the machinery was consigned. One of the plaintiffs, in explanation of these entries, testified that his partner had charge of the books and correspondence, and that as soon as he, the witness, learned the machinery had been charged to C. S. Hunt & Co., he told his partner, and gave him directions to alter the same by an entry on the books, by which C. S. Hunt & Co. were credited with the whole amount of the account, and the defendant charged with the same amount. This was objected to, and admitted subject to the defendant's exception.

One of the plaintiffs was asked, by their counsel, whether he had any knowledge in reference to C. S. Hunt & Co., or their financial condition. The question was objected to by the defendant, and the witness was then asked if he knew C. S. Hunt & Co. at the time he furnished this machinery; to which the witness answered " No." This last question was admitted subject to the defendant's exception, and the plaintiffs were then

asked if they knew the defendant at that time. Subsequently, the defendant called a witness to show what was the financial reputation and standing of C. S. Hunt & Co. in Boston, before and at the time of making the charges; and, the question being excluded, excepted, upon the ground that it was competent, and that, if not so before, it was made admissible by the previous question put to the plaintiffs by their counsel.

The defendant had, before the trial, called for the plaintiffs' books of account and letter books, and the same had been produced and examined by the defendant; and, in order to show that the plaintiffs looked to C. S. Hunt & Co., caused to be read, by one of the plaintiffs, from the plaintiffs' letter book, a letter-press copy of a letter of July 3, 1871, signed by the plaintiffs, to one Benjamin Allen, as follows : " Mr. Benj. Allen, New Orleans. Dear Sir : We wrote you on Saturday with sketch. But we forgot to ask, what we want to know, whether they intend to start the mill up as soon as it is finished. This is important to us, for we want to get some money out of them, and we can go to work in a little different way, if they are not going to start right up. Let us know at once about this." One of the plaintiffs was asked by his counsel to explain what arrangements were referred to in this letter to Allen, which were to depend upon the time when the mill was to be started in New Orleans, and allowed to testify, subject to the defendant's objection, as follows : " We were short of money, and wanted to get some money from the defendant on this job. If they were going to start the mill right up, we thought to ask him for some payment on account; but if not, we proposed to ask him for the whole; because if they were going to start right up, they would have a chance to see what the mill was, and, from courtesy, we thought we would allow them to do that before we asked for a settlement."

It was contended by the plaintiffs' counsel in opening the case, as tending to show the defendant to be the real contractor, that the defendant had insured the goods sent to New Orleans. The defendant was asked by the counsel " if he, the defendant, insured the goods on his own account." This being objected to, and the defendant's counsel offering to show that he insured " for whom it might concern," the court ruled that this could

only be shown by the policies of insurance, but allowed the defendant to state that he charged the amount paid by him for insurance to C. S. Hunt & Co., who paid him for it.

The mill being constructed for a certain purpose, namely, to be set up in New Orleans, for the purpose of cleaning rice there, the defendant contended that there was an implied warranty that it was reasonably fit for this purpose. The plaintiffs offered no evidence as to the quality of the mill or its fitness, except the auditor's report. In reply, the defendant called one Chick, a miller, to testify to defects in the mill and its performance, and the manner in which it crushed the rice in the fall of 1871, when first set up. After the defendant's case was closed, the plaintiffs called a witness in rebuttal, and were allowed to show by him that the mill and machinery were properly constructed for the purpose of cleaning rice; that the Louisiana rice for the years 1870 and 1871, which this mill was used to clean, was soft and of a different quality from eastern or Carolina rice, and more easily crushed. The defendant objected that there was an implied warranty that the mill was fit for cleaning rice, and that it was for the plaintiffs to show, as a part of their case, compliance with that warranty on their part. The judge said: "I think it is competent and proper. How could the plaintiffs know that you were going to put in or produce evidence of the imperfection of the machine?" The defendant's counsel then said: "You remember that we asked nothing about Louisiana rice." The judge replied: "It is a part of your case to show that this work was not sufficiently done to justify them in claiming the price. You put in evidence to show that it was not well done, that it pounded the rice, and so on." The defendant's counsel then asked: "Does your honor say that it was a part of my case to show that it was not fitly done?" and the judge replied, "I do." The defendant excepted. The witness was then examined on the character of the mill. There was no discussion, other than as above appears, as to the question of the burden of proof; and the matter was not further alluded to during the trial.

The jury returned a verdict for the plaintiffs; and the defendant alleged exceptions.

*R. D. Smith*, for the defendant. 1. The Gen. Sts. *c.* 121, § 46, do not authorize the court to require an auditor to pass upon the question of the defendant's liability to the plaintiff. The auditor could and did state the account in his first report, and thereby performed his office, and the order of recommittal was unwarranted. *Jones* v. *Stevens.* 5 Met. 373, 377. *Bartlett* v. *Trefethen*, 14 N. H. 427.

If the statute authorizes such a finding, as the auditor finally made in this case, to be read to the jury as *primâ facie* evidence, it is unconstitutional, as violating article 15 of the Declaration of Rights, which provides that " in all controversies concerning property, and in all suits between two or more persons, except in cases in which it has heretofore been otherways used and practised, the parties have a right to a trial by jury, and this method of procedure shall be held sacred."

An auditor's report, if *primâ facie* evidence, is of course conclusive, unless controlled. Shaw, C. J., in *Allen* v. *Hawks*, 11 Pick. 359, 361. It is a mere opinion, unsupported by oath. *Tyson* v. *Commissioners*, 28 Md. 510. And the whole issue, which it was the right of the defendant to require the plaintiff to establish before the jury, is prejudged by an officer of the court.

It does not appear that this question of constitutionality has been argued and considered by this court. In *Locke* v. *Bennett*, 7 Cush. 445, Mr. Justice Fletcher discusses the powers of auditors very fully, but not the constitutionality of the statute. From his opinion may be gathered the early practice of courts in England, in actions of account, in which the question of liability of the defendant to account was first determined, and the case then sent to an auditor, every issue of fact being taken from the auditor and tried by the court. This method was probably adopted by the caution of the common law, in order that the trial by jury might not degenerate into a mere recording of the decree of a single person. In cases in chancery, and in actions of account, auditors were appointed at the time of the Declaration of Rights. At common law, in actions of account only, had it been otherwise used and practised to determine a defendant's liability than by a trial to a jury. A party may require even issues in equity to be submitted to a jury if he desires it, under this article of the Declaration of Rights. *Shaw* v. *Norfolk*

*County Railroad,* 16 Gray, 407. If this act is constitutional, then an act submitting the trial of a capital felony to an auditor, and making his report *primâ facie* evidence of guilt or innocence, would be constitutional.

It is said, " The report is a finding of an officer of the court; it is merely made evidence by statute ; it only changes the burden of proof ; it does not touch trial by jury." But the determination of the auditor is the result of a trial, which certainly is not a trial by jury, and yet it is one to which a party is compelled to submit, and in which his liability is determined. Before an auditor, the parties present their claims and answers and arguments ; he administers oaths and punishes for contempt; his hearing has all the insignia of a trial, and it proves a judgment seat before which the rights of the subject are at stake. *Lincoln* v. *Taunton Copper Manuf. Co.* 9 Allen, 181, 186. It does infringe upon the right of trial by jury, to make a finding of any tribunal or person *primâ facie* evidence, " except in cases in which it has heretofore been otherways used and practised." The right of appeal to a jury should be unclogged and untrammelled. *Sullivan* v. *Adams*, 3 Gray, 476. If an auditor's report may be made *primâ facie* evidence, why not conclusive ? *Rhines* v. *Clark*, 51 Penn. St. 96. It is the intent of the Declaration of Rights, that every subject shall have his rights passed upon by a jury of his peers, in the first instance, on the evidence, unprejudiced by any finding or decision of any auditor or other tribunal, which is made binding upon them, unless met by other testimony. *Francis* v. *Baker*, 23 Am. Law Reg. 392.* *Plimpton* v. *Somerset*, 33 Vt. 283. *United States* v. *Rathbone*, 2 Paine, 578, 581, 583. *Beers* v. *Beers*, 4 Conn. 535. *Commonwealth* v. *Williams*, 6 Gray, 1. *Copp* v. *Henniker*, 55 N. H. 179, 203. *Bee Printing Co.* v. *Hichborn*, 4 Allen, 63.

2. The testimony of one of the plaintiffs, that he gave his partner directions to alter the entries upon the books as soon as he learned the machinery had been charged to C. S. Hunt & Co., was not to a part of the *res gestæ*, and should have been excluded. Its admission allowed the plaintiffs to make a conversation between themselves evidence against the defendant. *Quinlan* v. *Davis*, 6 Whart. 169, 175.

---

* S. C. 11 R. I. 103.

3. The questions put to one of the plaintiffs, as to his knowledge of the parties to whom the goods were charged, related only to their financial reputation. This inquiry being opened, the defendant had a right to go into it and show what this reputation was. *Shaw* v. *Stone*, 1 Cush. 228. *Lee* v. *Wheeler*, 11 Gray, 236.

4. The explanation of the letter which contained no patent or latent ambiguity should not have been allowed. It gave the plaintiffs an opportunity to rebut what was written, by an irresponsive and unwarranted answer.

5. The defendant should have been allowed to show the fact that he acted as agent in effecting the insurance. *Robinson* v. *Litchfield*, 112 Mass. 28. *Worthington* v. *Cowles*, 112 Mass. 30.

6. The mill was constructed for a certain purpose. The defendant contended that there was an implied warranty that it should be reasonably fit for that purpose. This theory of the law was dashed to the ground by the colloquy which took place in the presence of the jury. The defendant, having excepted to what he regarded as an incorrect ruling, conducted his case and the argument thereof to the jury upon the data announced. The evidence was not admitted, as in *Lowe* v. *Pimental*, 115 Mass. 44, after the defendant's case was in, as a matter of discretion ; but the defendant was told that he must bear the burden of showing that the work was not sufficiently done. *Campbell* v. *New England Ins. Co.* 98 Mass. 381, 390. *McLoon* v. *Commercial Ins. Co.* 100 Mass. 472.

*E. Merwin*, for the plaintiffs.

GRAY, C. J. The practice of referring matters of account to auditors as subordinate officers of the court is of very ancient origin. In the common law action of account, which was in use as early as the reign of Henry III., the court, upon rendering the interlocutory judgment *quod computet*, assigned auditors to take the accounts between the parties. But that form of action was restricted to a few classes of accounts ; issues of law or of fact arising before the auditors were certified by them to the court for trial and determination by the court or by a jury ; and the auditors had no power to examine the parties on oath, until authorized so to do by the St. of 4 & 5 Anne, *c.* 16, § 27. For these reasons, the action of account fell into disuse, and the

court of chancery assumed jurisdiction of cases of account, and the masters in chancery, who took the place of auditors, decided in the first instance all questions of law or of fact arising before them, subject to the control and revision of the court. Bac. Ab. Accompt. 1 Spence Eq. Jur. 649, 650. *Locke* v. *Bennett*, 7 Cush. 445, 446–448.

In the last century, and in the early part of the present, the action of account was in use in Massachusetts; but it was gradually superseded by the action of assumpsit in the nature of account, or for money had and received. Prov. Sts. 1703 (2 Anne) ; 1748 (22 Geo. II.) ; 1752 (25 Geo. II.) ; 1770 (10 Geo. III.) ; Anc. Chart. 378, 566, 590, 671. St. 1785, c. 48. *Newman* v. *Homans*, (1762) Quincy, 5. *Jones* v. *Harraden*, (1784) 9 Mass. 540 note. *Sargent* v. *Parsons*, 12 Mass. 149. 1 Dane Ab. 164, 169–171. Yelv. (Am. ed. ) 202 note. And this court, while it had no standing masters in chancery, (who were first appointed under the St. of 1826, c. 109, § 4,) was accustomed, in administering its then very limited equity jurisdiction, to refer matters of account to auditors. *Lyman* v. *Warren*, 12 Mass. 412. *Pomeroy* v. *Winship*, 12 Mass. 513, 525. See also *Chappedelaine* v. *Dechenaux*, 4 Cranch, 306 ; *Field* v. *Holland*, 6 Cranch, 8.

By the St. of 1817, c. 142, entitled " an act for facilitating trials in civil causes," it was provided that whenever, in any action, it should appear that an investigation of accounts or an examination of vouchers was necessary for the purposes of justice between the parties, the court might appoint an auditor or auditors to state the account between the parties and to make report thereof to the court, and that the report so made should, under the direction of the court, be given in evidence to the jury, subject however to be impeached by evidence from either party. Since the passage of that statute there is, we believe, but a single case of an action of account in our books. *Fowle* v. *Kirkland*, 18 Pick. 299.

In *Fanning* v. *Chadwick*, 3 Pick. 420, decided in 1826, it was observed by Mr. Justice Wilde that there would seem to be no necessity for reviving the action of account, because justice might be administered in a form more simple and less expensive, by an action of assumpsit, which, since the court had been authorized to appoint auditors, had all the advantages, without

the disadvantages, peculiar to an action of account. And for this reason the action of account was abolished by the Revised Statutes. Rev. Sts. *c.* 118, § 43, and Commissioners' note.

In *Allen* v. *Hawks*, 11 Pick. 359, decided in 1831, it was held that, under the St. of 1817, the report of an auditor was *primâ facie* evidence, but did not prevent a party dissatisfied with it from calling at the trial a witness who had testified before the auditor. Chief Justice Shaw said that the effect of the statute, the reference and report was to introduce a new species of competent evidence, often a very useful one, and to facilitate, not to supersede jury trials, by narrowing down the points of controversy before the jury, and by enabling the party, going into court armed with legal *primâ facie* evidence in his favor, to be prepared to confine his evidence and to give his exclusive attention to the real points in controversy between the parties ; and that " a report of auditors does not, like an award of referees, stand in place of a trial, but is merely received as competent evidence." The remark of the Chief Justice in the course of the opinion, that a " useful and very important effect of a report is to change the burden of proof," is not to be taken as indicating that the report changes the burden of proof, technically speaking, but only as signifying that it makes out a *primâ facie* case, and obliges the other party to offer evidence to rebut or control it, or else it will be conclusive. *Morgan* v. *Morse*, 13 Gray, 150.

The opinion of the Chief Justice in *Allen* v. *Hawks*, as well as that of Mr. Justice Wilde in *Fanning* v. *Chadwick*, clearly shows that it had not occurred to the court that there was anything unconstitutional in giving to an auditor's report upon a matter of account the effect of *primâ facie* evidence at the trial before a jury.

It is contended that it was not within the province of the auditor to pass upon the general question of the defendant's liability to the plaintiff. In support of this position, the case of *Jones* v. *Stevens*, 5 Met. 373, is relied on. But, as observed by Mr. Justice Fletcher in *Locke* v. *Bennett*, 7 Cush. 453, " the decision turned upon the particular facts and circumstances of that case, and does not throw any light upon the inquiry as to the general powers and duties of an auditor." It was an ac-

tion for work, which the defendant contended had been done for him by the plaintiff and one Howarth jointly. Evidence was introduced by both parties before the auditor, upon the question whether the work was done by the plaintiff alone or by the plaintiff and Howarth jointly, and also upon the question whether there was a partnership between the plaintiff and Howarth. The auditor found a certain sum due from the defendant to the plaintiff, and in his report stated certain facts bearing upon the question of partnership. The judge who presided at the trial in the Court of Common Pleas instructed the jury that the report of the auditor was *primâ facie* evidence on the question whether any work was done by the plaintiff for the defendant, and of the value thereof ; that if the work was done by the plaintiff and Howarth jointly, the plaintiff was not entitled to recover in this action ; that the jury might properly consider the facts stated in relation to the partnership, but that it was not competent for the auditor to pass upon the question of partnership, and they should exclude from their consideration so much of his report as passed upon that question. This court held that the defendant had no ground of exception.

It is evident that the only point adjudged in *Jones* v. *Stevens* was that there was no error in the admission of the auditor's statement of certain facts bearing upon the question of partnership ; for the ruling at the trial, that the auditor had no power to pass upon the question of partnership, was in favor of the defendant, and had not been excepted to. The *dictum* of Mr. Justice Hubbard, that "those matters of defence which go in bar of the action, or which are not matters of account, are not to be passed upon by an auditor, and, if done without consent of parties, should be stricken from the report, or the report itself should be recommitted or rejected," must be limited to such matters as are not included in the order of reference, as sufficiently appears by the rest of his opinion, and as is clearly settled by a series of earlier and later decisions, which hold that the report of an auditor is *primâ facie* evidence, not merely of the result of the accounts, but of the facts or inferences stated in his report, as derived from the evidence before him and involved in the determination of the issues referred to him, including, when necessary to the determination of these issues, his finding upon the

general question whether, and to what extent, the defendant is or is not liable to the plaintiff. *Lazarus* v. *Commonwealth Ins. Co.* 19 Pick. 81. *Locke* v. *Bennett,* 7 Cush. 445, 453. *Nolan* v. *Collins,* 112 Mass. 12. *Fair* v. *Manhattan Ins. Co.* 112 Mass. 320, 328–332. *Lowe* v. *Pimental,* 115 Mass. 44. *Corbett* v. *Greenlaw,* 117 Mass. 167.

The provisions of the St. of 1817 have been substantially reënacted upon each revision of the statutes of the Commonwealth. Rev. Sts. c. 96, §§ 25–31. Gen. Sts. c. 121, §§ 46–50. They have been constantly applied in practice, and repeatedly expounded by this court, without a doubt of their validity being suggested, for nearly sixty years. After so long a practical construction and acquiescence, by the Legislature, by the courts, and by all parties to judicial proceedings, it would require a very clear case to warrant the court in setting them aside as unconstitutional. *Stuart* v. *Laird,* 1 Cranch, 299, 309. *Packard* v. *Richardson,* 17 Mass. 122, 144. *Commonwealth* v. *Parker,* 2 Pick. 550, 557.

But it does not appear to us that, if these statutes had been just enacted for the first time, there would be any ground for holding them to be unconstitutional. While the right of trial by jury in actions at law is secured by the Constitution, the forms of proceeding and the rules of evidence are within the control of the Legislature.

It has generally been held, in criminal as well as in civil cases, that a statute allowing a trial by jury on appeal from a judgment of a magistrate, and upon giving bail for the defendant's appearance in the one, and security for the prosecution of the appeal and for costs in the other, does not impair the constitutional right. *Jones* v. *Robbins,* 8 Gray, 329, 341, 342, and cases cited. *Hapgood* v. *Doherty,* 8 Gray, 373. And in civil cases the Legislature may impose the condition that the defendant shall make affidavit that he has a valid defence. *Hunt* v. *Lucas,* 99 Mass. 404. *Biddle* v. *Commonwealth,* 13 S. & R. 405.

The constitutional power of the Legislature to prescribe rules of evidence is well settled. Parsons, C. J., in *Kendall* v. *Kingston,* 5 Mass. 524, 534. Washington, J., and Marshall, C. J., in *Ogden* v. *Saunders,* 12 Wheat. 213, 262, 349. This power has been often exercised by the Legislature, with the sanction of the

courts, so as to change the burden of proof, or to affect the question what shall be deemed *primâ facie* evidence at the trial before the jury.

For instance, the Legislature may enact that the deed of a collector of taxes shall be *primâ facie* evidence that the land has been sold for non-payment of taxes at a time and in a manner authorized by law. *Pillow* v. *Roberts*, 13 How. 472, 476. *Callanan* v. *Hurley*, 93 U. S. 387. *Hand* v. *Ballou*, 2 Kernan, 541. Cooley on Const. Lim. (3d ed.) 367, 368. So it may enact that the record of a deed shall be evidence that it has been duly acknowledged or proved before a magistrate, without any record of the certificate or of the proof of acknowledgment. *Webb* v. *Den*, 17 How. 576. A statute providing that a notary's protest of a promissory note should be evidence of the facts stated therein has been held by the Supreme Court of Maine to be constitutional, and applicable to a protest made before its passage. *Fales* v. *Wadsworth*, 23 Maine, 553. By our own statutes, the recorded certificate of two witnesses is made sufficient evidence of an entry to foreclose a mortgage, and the affidavit of the mortgagee himself evidence that the requisitions of a power of sale have been complied with. Gen. Sts. *c.* 140, §§ 2, 42, 43. *Hawkes* v. *Brigham*, 16 Gray, 561. *Ellis* v. *Drake*, 8 Allen, 161, 163. *Thompson* v. *Kenyon*, 100 Mass. 108. *Childs* v. *Dolan*, 5 Allen, 319. *Field* v. *Gooding*, 106 Mass. 310, 312.

Mr. Justice Story gave the fullest effect to an act of Congress which provided that the certificate of a vice consul, that a master had refused to take a destitute seaman on board, should be *primâ facie* evidence in a suit against the master for the penalty imposed on him for such refusal. U. S. St. February 28, 1803, § 4. U. S. Rev. Sts. § 4578. *Matthews* v. *Offley*, 3 Sumner, 115, 123. The statutes of this Commonwealth have imposed upon the defendant in criminal prosecutions the burden of proving any license, appointment or authority, relied on as a justification, which the Commonwealth, but for these statutes, would have been obliged to disprove. Sts. 1844, *c.* 102; 1864, *c.* 121. Gen. Sts. *c.* 172, § 10. *Commonwealth* v. *Thurlow*, 24 Pick. 374. *Commonwealth* v. *Kelly*, 10 Cush. 69. *Commonwealth* v. *Lahy*, 8 Gray, 459. *Commonwealth* v. *Carpenter*, 100 Mass. 204. Even statutes providing that, in prosecutions for unlawful sales of in-

toxicating liquors, delivery in or from any building or place other
than a dwelling-house " shall be deemed *primâ facie* evidence of
a sale," have been held constitutional. Sts. 1852, *c.* 322, § 12;
1855, *c.* 215, § 34. *Commonwealth* v. *Williams*, 6 Gray, 1. *Com-
monwealth* v. *Rowe*, 14 Gray, 47. See also *State* v. *Cunningham*,
25 Conn. 195; *State* v. *Hurley*, 54 Maine, 562; U. S. St. July
18, 1866, § 4; U. S. Rev. Sts. § 3082.

In *Goshen* v. *Richmond*, 4 Allen, 458, it was held that the
provision of the St. of 1845, *c.* 222, reënacted in the Gen. Sts. *c.*
107, § 2, that " the validity of a marriage shall not be questioned
in the trial of a collateral issue, on account of the insanity or
idiocy of either party, but only in a process duly instituted in
the lifetime of both parties for determining such validity," ap·
plied to marriages existing at the time of its passage ; and Mr.
Justice Metcalf, delivering the opinion of the court, said : " The
defendants deny that it was the intention or within the power of
the Legislature to make this enactment retrospective, that is, to
prohibit the admission of evidence to show the invalidity of pre-
viously existing marriages. But the court do not doubt either
that intention or that power of the Legislature. That body has
unquestionable authority to change the common law rules of evi-
dence, to prescribe the modes of proof, and to direct who may or
may not be competent witnesses. And this authority has often
been exercised. Thus, the burden of proof, which by the com-
mon law is on one party, has in certain cases been put, by stat-
ute, on the other. And recent statutes have so far changed the
preëxisting rules of evidence, as to make all persons (with very
few exceptions) who have sufficient understanding, competent
witnesses, not only in the trial of others' actions, but also of
their own. Those statutes have been held to render these per-
sons competent to testify, not only concerning matters of which
they had knowledge before they were made competent, but also
in cases that were pending before." See also *Monson* v. *Palmer*,
3 Allen, 551, 556. The existing witness act omits the exception
(contained in the statutes in force when that opinion was deliv-
ered) of the case in which one party to the original contract or
cause of action is dead or insane, and all other exceptions, in
civil cases, save that of private conversations between husband
and wife. St. 1870, *c.* 393.

In a very recent case, it was held by the Court of Appeals of New York, that a special statute authorizing testimony as to the title to a certain estate to be perpetuated under the direction of the court of chancery, and making it *primâ facie* evidence of the facts set forth in the examination of the witnesses, if the Chancellor should be of opinion that the depositions furnished good *primâ facie* evidence of such facts, but not giving any adverse party the right of cross-examination, was within the constitutional authority of the Legislature. And the court said: " The rules of evidence are not an exception to the doctrine that all rules and regulations affecting remedies are, at all times, subject to modification and control by the Legislature. The changes which are enacted from time to time may be made applicable to existing causes of action, as the law thus changed would only prescribe the rule for future controversies. It may be conceded, for all the purposes of this appeal, that a law that should make evidence conclusive, which was not so necessarily in and of itself, and thus preclude the adverse party from showing the truth, would be void, as indirectly working a confiscation of property, or a destruction of vested rights. But such is not the effect of declaring any circumstance or any evidence, however slight, *primâ facie* proof of a fact to be established, leaving the adverse party at liberty to rebut and overcome it by contradictory and better evidence. That this may be done is well settled by au thority." *Howard* v. *Moot*, 64 N. Y. 262, 268.

The statutes allowing every party to testify in his own behalf, even after the death of the other party to the original contract or cause of action, the statutes making deeds of public officers, or conveyances recorded at the mere request of the grantee, or *ex parte* affidavits, without opportunity of cross-examination, *primâ facie* evidence, and the statutes making particular facts *primâ facie* evidence against defendants in criminal prosecutions, al appear to us to have worked greater changes in the position of the parties at the trial before the jury, than a statute that merely gives the effect of *primâ facie* evidence to an auditor's report, made after full hearing of both parties, and upon a matter involving the investigation of accounts, which cannot, in the view of the Legislature that framed the statute, and of the court that makes the order of reference in the particular case, be con-

veniently or intelligently tried by a jury, without the assistance of a previous examination and report by an auditor. And we do not find anything, in the authorities cited at the bar, that creates any doubt in our minds upon this subject.

In *United States* v. *Rathbone*, 2 Paine, 578, the only point decided was that the Constitution and laws of the United States did not authorize a federal court, sitting in the State of New York, to order a case to be referred to arbitration, in accordance with a statute of that state. Mr. Justice Thompson said: " How far this view of the case may affect the validity of the state law is a point not drawn in question, or intended to be considered." 2 Paine, 583. And the constitutionality of that statute has since been affirmed by the Supreme Court of that state. *Lee* v. *Tillotson*, 24 Wend. 337.

In *Plimpton* v. *Somerset*, 33 Vt. 283, and *Copp* v. *Henniker*, 55 N. H. 179, actions for damages for defects in highways, not involving any investigation of accounts, had been referred to commissioners or referees, under statutes which provided that their reports should be *primâ facie* evidence upon a subsequent trial before a jury. The decision of a majority of the court in *Plimpton* v. *Somerset*, that such a statute, as applied to such a case, was unconstitutional, could not be extended to the case of an account, consistently with the previous decisions of the same court in *Brown* v. *Kimball*, 12 Vt. 617, and *Stoddard* v. *Chapin*, 15 Vt. 443. In *Copp* v. *Henniker*, the court held the provision for the appointment of a referee to be valid, and did not decide pon the validity of that part of the statute which provided that 'his report should be evidence upon a trial before a jury; and the only judge, who made any remarks on that point, said in regard to the auditor law of New Hampshire of 1823, which was copied from our St. of 1817 : " The validity of an act, which has been in such extensive operation and universally acquiesced in for fifty years, will probably not be questioned." 55 N. H. 209. The constitutionality of the New Hampshire statute of 1823 has since, upon elaborate consideration, been fully established. *Doyle* v. *Doyle*, 56 N. H. 567. *Perkins* v. *Scott*, 57 N. H. 55.

In *King* v. *Hopkins*, 57 N. H. 334, which was an action on the case for flowing the plaintiff's land, it was decided that the

provision which made the report of referees evidence at the trial before the jury was unconstitutional. But the weight of that decision as an authority is greatly impaired, to say the least, by the fact that it was made, under the peculiar judicial system existing at the time in that state, by one justice of the Superior Court of Judicature and one judge of the Circuit Court, against the dissent of the Chief Justice of the Superior Court, and reversing the ruling of the third justice of the Superior Court, who presided at the trial — so that the final result was against the opinion of a majority of the judges of the highest court of the state. And we are not now required to pass ✳ upon the validity of such a provision, as applied to a case which does not call for the investigation of accounts, but presents a simple issue of fact or of damages, suitable for the determination of a jury in the first instance.

The only case, cited by the learned counsel for the defendant, which supports his position, is *Francis* v. *Baker*, recently decided by the Supreme Court of Rhode Island, in which a statute, substantially corresponding to our own, was held unconstitutional, as impairing the right to trial by jury. The respect due to a decision of the highest court of a neighboring state, and the ability of the argument which has been addressed to us, have induced us to treat the matter at more length than we should otherwise have thought necessary ; but, after full consideration, we are unanimously of opinion that neither that decision, nor the reasons assigned in support of it, are sufficient to justify us in overturning the law of this Commonwealth, as established, upon what appear to us to be firm foundations, by the practice of more than half a century.

In the other rulings on questions of evidence, no error appears. The original entries on the plaintiff's books, charging the goods to C. S. Hunt & Co., were not conclusive against the plaintiffs. *Allen* v. *Fuller*, 118 Mass. 402. The testimony of one of the plaintiffs, as to the circumstances under which those entries were altered so as to be charges against the defendant, was competent to explain the apparent alteration in the books. Evidence of the financial reputation of C. S. Hunt & Co. was rightly rejected upon the issue whether the plaintiffs looked to them or to the defendant for payment, because the fact, if

proved, that their financial reputation was good, had of itself no tendency to show that the plaintiffs sold to them, and it had no tendency to contradict the testimony of one of the plaintiffs that he did not know them at all. As the letter to Allen, which had been put in evidence by the defendant as an admission of the plaintiffs, did not show, upon its face, the transaction to which, or the persons to whom it related, the testimony of one of the plaintiffs was admissible to explain it. *Blake* v. *Stoddard*, 107 Mass. 111. The ruling, that the fact that the defendant insured "for whom it might concern" could be shown only by the policies of insurance, affords no ground of exception, the defendant having been allowed to testify that he charged the premiums to C. S. Hunt & Co., and was paid therefor by them.

The bill of exceptions clearly shows that the opinion expressed by the presiding judge, as to the testimony offered by the plaintiffs in rebuttal, was intended by him and was treated by the parties as a mere ruling upon the competency of that testimony and the propriety of admitting it at that stage of the case, and not as an instruction to the jury upon the burden of proof.                              . *Exceptions overruled.*