

# THE ATTORNEY GENERAL

## OF TEXAS

### AUSTIN 11, TEXAS

PRICE DANIEL
ATTORNEY GENERAL

March 31, 1952

Hon. John R. Lee
County Attorney
Winkler County
Kermit, Texas

Opinion No. V-1428

Re: Several questions on H. B.
403, 52nd Legislature, the
"Hot Check Law."

Dear Mr. Lee:

Your request for an opinion relates to House Bill 403, Acts 52nd Leg., R.S. 1951, ch. 305, p. 496, commonly referred to as the "Hot Check Law." This recent statute amends Article 567b, Vernon's Penal Code. Of primary importance is your inquiry directed to the validity of the "prima facie evidence of intent to defraud" provision contained in Section 2 of House Bill 403. Our consideration of this question entails a discussion of two distinct phases of this matter, namely, (1) the constitutionality of the "prima facie evidence" provision, and (2) the construction, operation, and effect of this provision in view of Colin v. State, 145 Tex. Crim. 371, 168 S.W.2d 500 (1943), in repsect to a worthless check given in payment of a pre-existing obligation. Your remaining two questions concern the necessity of the ten days' notice of nonpayment of a worthless check to the drawer, as provided in Section 2 of House Bill 403, as a prerequisite to a prosecution under the act.

The pertinent provisions of House Bill 403 are as follows:

"Section 1. It shall be unlawful for any person to procure any article or thing of value, or to secure possession of any personal property to which a lien has attached, or to make payment of any pre-existing debt or other obligation of whatsoever form or nature, or for any other purpose to make or draw or utter or deliver, with intent to defraud, any check, draft or order, for the payment of money, upon any bank, person, firm or corporation, knowing at the time of such making, drawing, uttering or delivering, that the maker,

or drawer, has not sufficient funds in, or on deposit with, such bank, person, firm or corporation, for the payment of such check, draft or order, in full, and all other checks, drafts or orders upon such funds then outstanding.

"Sec. 2. As against the maker, or drawer thereof, the making, drawing, uttering or delivering of a check, draft or order, payment of which is refused by the drawee, shall be prima-facie evidence of intent to defraud and of knowledge of insufficient funds in, or on deposit with, such bank, person, firm or corporation, provided such maker or drawer shall not have paid the holder thereof the amount due thereon, within ten (10) days after receiving notice that such check, draft or order has not been paid by the drawee.

"Sec. 3. The word 'notice' as used herein shall be construed to include either notice given to the person entitled thereto in person or notice given to such person in writing. Such notice in writing shall be conclusively presumed to have been given when deposited, as registered matter, in the United States mail, addressed to such person at his address as it appears on such check, draft or order."

The comparable section of the repealed Article 567b, V. P.C., prior to the 1951 amendment, provided as follows:

"Sec. 2. It shall be unlawful for any person, with intent to defraud, to pay for any goods, service, labor, or other thing of value, theretofore received, by giving or drawing any check, draft, or order upon any bank, person, firm, or corporation, if such person does not, at the time said check, draft, or order is so given or drawn, have sufficient funds with such bank, person, firm, or corporation to pay such check, draft, or order, and all other checks, drafts, or orders upon said funds outstanding at the time such check, draft, or order was so given or drawn; provided that such check, draft, or order is not paid upon presentation, the nonpayment of same shall be prima facie evidence that such person giving or drawing such check, draft, or order had

insufficient funds with the drawee to pay same at
the time the said check, draft, or order was given
or drawn and that said person gave such check, draft,
or order with intent to defraud; and provided further
that proof of the deposit of said check, draft, or order
with a bank for collection in the ordinary channels of
trade and the return of said check, draft, or order un-
paid to the person making such deposit shall be prima
facie evidence of presentation to, and nonpayment of
said check, draft, or order by, the bank, person, firm,
or corporation upon whom it was drawn; and provided
further that where such check, draft, or order has been
protested, the notice of protest thereof shall be ad-
missible as proof of presentation and nonpayment
and shall be prima facie evidence that said check, draft,
or order was presented to the bank, person, firm or
corporation upon which it was drawn and was not paid."

It is to be noted that the new "Hot Check Law," in amend-
ing Article 567b, V.P.C., embodies substantial changes not only in
the import and substance of the offense but also in the rules of evi-
dence available in the prosecution of the offense. This is especial-
ly true in Section 2 of House Bill 403, which sets forth the prima
facie evidence rule concerning the necessary intent to defraud. It
is upon this provision that your questions are principally centered.
Under the repealed enactment, there were three prima facie evi-
dence rules, the first relating to the presumption[1] of insufficiency
of funds and intent to defraud upon proof of nonpayment, the second
to the presumption of presentation and nonpayment upon proof of
deposit, and the third to the presumption of presentation and non-
payment upon proof of notice of protest. The new hot check law
omits the second and third rules altogether; and it modifies the
first rule by raising a statutory presumption of intent to defraud
and knowledge of insufficiency of funds upon proof of nonpayment,
but adds thereto, as a condition precedent to its operation, the

---

1/ Throughout this opinion the term "presumption" is used to
mean a permissive presumption amounting to sufficient evidence to
create a prima facie case. See Floeck v. State, 34 Tex. Crim. 314,
30 S.W. 794 (1895); McCormick, Charges on Presumptions and Bur-
den of Proof, 5 N.C.L. Rev. 291, 295 (1927).

requirement that the maker or drawer must be notified of such nonpayment and must be granted ten days in which to make the worthless check good.

After a comparative study of the two statutes and an examination of the pertinent authorities in this State, it is our opinion that the "rule of prima facie evidence" contained in Section 2 of House Bill 403 is valid and constitutional.

It is well recognized in Texas and throughout the United States that the legislature may within certain limits establish or change the rules of evidence. 2 Wharton, Criminal Evidence (10th Ed. 1912), Secs. 715, 715A. Under this legislative power our Texas courts have held that proof of certain acts of one accused of crime may be made prima facie evidence of some incriminating fact against him. Floeck v. State, 34 Tex. Crim. 314, 30 S.W. 794 (1895); O'Brien v. State, 90 Tex. Crim. 276, 234 S.W. 668 (1921); Newton v. State, 98 Tex. Crim. 582, 267 S.W. 272 (1924); Mayes v. State, 145 Tex. Crim. 295, 167 S.W.2d 745 (1942).

In Floeck v. State, supra, the Court of Criminal Appeals held that it was within the power of the Legislature to make a license procured from the federal authorities to pursue the occupation of a liquor dealer prima facie evidence that the party procuring it pursued such occupation for the time specified in the license. In announcing this rule, the Court in its opinion stated:

> " 'While the right of trial by jury in actions of law is secured by the constitution, the forms of proceeding and the rules of evidence are within the control of the legislature. * * * The constitutional power of the legislature to prescribe rules of evidence is well settled. * * * This power has often been exercised by the legislature, with the sanction of the courts, so as to change the burden of proof, or to affect the question what shall be prima facie evidence at the trial before the jury. . . .' Vide Holmes v. Hunt, 122 Mass. 505. . . .
>
> "A number of other authorities from other states might be cited to the same effect, but we deem it unnecessary. So far as we have examined, they all concur in the view that it is within the power of a legislature to establish, change, or alter rules of evidence and

procedure in the courts." [Emphasis added throughout.]

The doctrine announced in the Floeck case was followed in subsequent decisions in this State, subject only to the qualification that the statutory presumption must not be an unreasonable exercise of the legislative power and must not infringe the right of trial by jury and the power of a jury to review all the evidence in a case and return its verdict accordingly.

It was not until recently that the Texas courts attached other limitations, by express language and through practical construction, to the general power of the Legislature to prescribe statutory rules of evidence in criminal cases. Both of these cases involved a construction of Article 567b, V.P.C., the old hot check law.

In Mayes v. State, 145 Tex. Crim. 295, 167 S.W.2d 745 (1942), the Court of Criminal Appeals held invalid the provision in the former law that proof of deposit of a check for collection was prima facie evidence of presentation and nonpayment. The court based its decision on the ground that the Legislature had gone beyond legitimate limits in entending the rules of evidence when it attempted to raise a presumption against an accused from facts and circumstances over which he had no control and with which he had no connection. It was also pointed out that this presumption was merely the basis for another presumption, "thus piling one presumption upon another as to the supposed acts of third parties with none of whom appellant had any connection, nor over whom he had any control." In establishing this limitation to the general rule of the Floeck case, the court stated:

"While such a rule has been recognized by our own court as well as many others, certainly a law should not be upheld which would make an act prima facie evidence of a necessary criminative fact against one accused of crime when such party had no control over nor connection with the act in question. The same would be true where it was sought to make certain facts and circumstances over which accused had no control or with which he had no connection prima facie evidence against him."

In Colin v. State, 145 Tex. Crim. 371, 168 S.W.2d 500 (1943), the case submitted to the Court of Criminal Appeals involved a

prosecution for passing a worthless check in payment of a pre-existing obligation under Section 2 of Article 567b, V.P.C. The sole evidence introduced by the State to establish intent to defraud was that the worthless check was given in payment of a pre-existing indebtedness. The court, in reversing the case, held that evidence which merely showed that a bad check was given in payment of a pre-existing indebtedness, without the presence of accompanying facts, was insufficient to establish the intent to defraud which is essential to a violation of the hot check law. Thus, the court held in effect that the presumption of intent to defraud arising from proof of nonpayment was inoperative under these circumstances.

The decisions in these two cases doubtlessly prompted the Fifty-second Legislature of Texas to revise substantially the hot check law, as it did by enacting House Bill 403. Apparently the "prima facie evidence of intent to defraud" provision was re-written in an effort to obviate the defects pointed out by the Court of Criminal Appeals and to conform to its rulings in the Mayes case and the Colin case. In enacting Section 2 of House Bill 403, it is our opinion that the Legislature accomplished its purpose.

The primary constitutional objection leveled at the prima facie evidence clause of the old hot check law, under the Mayes decision, was that the statutory presumption arose solely upon the acts of third parties, over whom the accused had no control or with whom he had no connection. We do not believe, however, that a prosecution utilizing the prima facie evidence rule of the new statute would be subject to such objection. In an effort to obviate the constitutional defects pointed out by the court in the Mayes case, and to conform to the ruling therein, it was the apparent purpose of the Legislature to transfer to a maker or drawer of a worthless check the power to exercise the principal control and connection over the facts and circumstances from which the statutory presumption springs. It is clear that the statutory presumption in the new law does not become operative to establish an intent to defraud until the maker or drawer of the bad check has received actual notification of the nonpayment of the instrument, and, in addition, unless such maker or drawer has not paid the holder thereof the amount due within ten days of such notice. Thus, the new hot check law differs from the repealed enactment in that the necessary intent to defraud on the part of the accused cannot now be presumed until the accused himself has had a fair opportunity to take action. The

requirement of notification of nonpayment of the bad check, together with a ten-day period during which the maker by his action in making the check good could automatically negative the presumption of intent to defraud, would seem to grant the necessary control and connection demanded by the Mayes case.

Consequently, it is our opinion that the new provision would not fall within the limitation placed upon the general rule in the Mayes case.

With respect to the other general qualifications on the power of the Legislature to prescribe rules of evidence, it is clear that the rule of prima facie evidence set out in Section 2 of House Bill 403 does not infringe the right of trial by jury. Floeck v. State, supra.

The issue of a specific intent to defraud is, in the final analysis, a question of fact for the determination of a jury, after full consideration of all the facts in the case. It is undisputed, however, that the employment of a prima facie rule of evidence in a criminal prosecution does not operate to deprive the jury of its inherent right and power to review all of the evidence in a case, and to return its verdict based upon all the facts.

The statutory presumption provision contained in Section 2 of House Bill 403 is not a conclusive one, but is rebuttable. It does not operate to shift the burden of proof upon the defendant. The presumption of innocence still remains with the defendant, but along with such presumption of innocence, the jury is entitled to consider the presumption under the statute as to knowledge of insufficient funds and intent to defraud. It is still the prerogative of the trial jury to ascertain, as a question of fact, whether or not under all the facts and circumstances the accused acted with the specific intent necessary.

The general rule in Texas as to the operation and effect of a prima facie evidence rule is succinctly stated in Floeck v. State, supra, in the following language:

> "The object of this provision was not merely to render such evidence admissible, for, without the aid of the statute, it might have been received, although further evidence to show intent would have been necessary. Neither is it made conclusive proof of such

> intent, but merely presumptive evidence, and as such proper for the consideration of the jury, in connection with the other evidence in the case. . . . It is merely proof of the case, upon which the jury may find a verdict, unless rebutted by other evidence."

Moreover, the fact that it is indeed difficult to establish the specific intent to defraud in a prosecution of this nature renders it not an unreasonable exercise of the legislative power to prescribe rules of evidence in criminal cases, and thus we believe that this character of evidence may be resorted to in order to establish a prima facie case. Floeck v. State, supra.

The Legislature in enacting prima facie provisions to criminal statutes does so for the purpose of aiding the State in making proof of some essential element of the offense. It is obvious from the very nature of the offense here involved that in most cases it would be extremely difficult, if not impossible, to establish proof of the requisite knowledge and intent by means of subjective evidence as to the state of mind of the drawer. These facts, therefore, must be determined primarily from the circumstances surrounding the offense. It is a valid exercise of the legislative power to prescribe a rule of prima facie proof based upon reasonable inferences from established facts. Floeck v. State, supra. In regard to the presumption created by Section 2 of House Bill 403, there is a rational connection between the facts which must be proved and the facts which may be presumed. Had the worthless check been passed without any criminal intent to defraud, it is reasonable to assume that the drawer, when notified of its nonpayment, would take immediate steps to rectify the matter. In such event, the statutory presumption would not attach. On the other hand, a contrary course of conduct by the drawer upon notification of the nonpayment of the check would be indicative of his bad faith in drawing the check. Consequently, it is our opinion that the creation of this presumption was not an unreasonable exercise of legislative power.

For the foregoing reasons, it is our opinion that Section 2 of House Bill 403, in prescribing a prima facie rule of evidence of intent to defraud in aid of a prosecution under the act, is a valid and constitutional exercise of the legislative power to establish rules of evidence in criminal cases.

Nor do we deem the case of Colin v. State, supra, to be

authority to the contrary. The Colin case does not deny the power
of the Legislature to prescribe a prima facie rule of evidence in
aid of the prosecution of the offense of passing a worthless check.
We conceive that the holding of the court in that case was limited
to and based solely upon the sufficiency of the evidence to support
a conviction for the offense charged. Under the opinion of the Colin
case, the court held only that, in a prosecution under the old hot
check law, evidence which merely showed that a bad check was giv-
en in payment of a pre-existing indebtedness, without the presence
of accompanying facts, was insufficient to establish the intent to de-
fraud which is essential to a violation of the law.

In its opinion in the Colin case, the Court of Criminal Ap-
peals stated:

> "The question next arising is as to whether or not
> the evidence establishes an intent to defraud where the
> only thing in evidence is that the check was given for a
> pre-existing indebtedness. In construing statutes of this
> nature the courts of various states are in conflict. Some
> cases hold that a set of circumstances may be presented
> in which it is shown that, even though the check was giv-
> en for a pre-existing indebtedness, there may be shown
> an intent to defraud by reason of the presence of accom-
> panying facts. Other cases hold, as a matter of law that
> where the only thing that the evidence shows is that the
> check was given for a pre-existing indebtedness there is
> no intent to defraud. Other cases hold, as a matter of
> law, that an intent to defraud is shown, though the check
> was given for a pre-existing indebtedness."

After reviewing the decisions from other jurisdictions
in support of the above-stated three general rules, the opinion con-
cludes:

> "We have been unable to find any authorities in
> Texas which would prove helpful. The State feels that
> probably the Ohio case correctly represents the law.
> There may be facts accompanying the payment of a
> pre-existing debt which would evidence an intent to
> defraud, but the mere fact that an account was paid by
> a bad check does not show an intent to defraud. We

think a jury would be warranted in finding an intent to defraud under the circumstances shown in the Lowenstein case from Ohio. . . .

"Under the facts of this case it would seem that there was no intent to defraud shown because the evidence merely shows that the check was given for a pre-existing indebtedness.

". . .

". . . It is not to be understood that we are holding that under no circumstances could the statute be violated by giving a bad check for a pre-existing debt. Facts might be present which would show an intent to defraud in giving such a check, but no such facts are here present."

Although the decision of the court in ruling upon the sufficiency of the evidence had the practical effect of rendering useless the prima facie evidence provision as an aid to a prosecution under the old hot check law where the check was for a pre-existing debt, the court did not, in any measure, inhibit or limit the constitutional authority of the Legislature to establish or change the rules of evidence. In this respect the Colin case differs from Mayes v. State. There is a distinction between declaring a legislative enactment invalid and unconstitutional and holding that the evidence, in a particular case, is insufficient to establish an essential element of an offense under the law. In the one case, the decision operates as a judicial ascertainment of the limitations of the legislative authority upon some specific constitutional ground, thereby offering some guide or criterion to the future powers and prerogatives of the Legislature. On the other hand, a decision ruling upon the sufficiency of the evidence tends only to determine the basic or minimum standard of proof required in order to establish the commission of an offense or to prove an essential element thereof. Therefore, when a new case is initiated based upon new and additional facts in excess of the minimum standard required by judicial precedent, the sufficiency of the evidence to establish the essential element must of necessity be decided primarily upon the merits of the singular facts and circumstances of the new prosecution.

Thus, we are convinced that a prosecution brought under

the new hot check law would not present an analogous fact situation to that which existed in the Colin case. For should the prosecution seek to utilize the prima facie rule of evidence of Section 2 of House Bill 403, the proof offered by the State must not only establish the nonpayment of the worthless check, but must of necessity further reveal evidence of the notification of the nonpayment of the check to the drawer, in addition to evidence that the drawer did not make the check good within a ten-day period. This additional evidence which is required to be shown prior to the operation of the prima facie rule exceeds the minimum standard of proof set by the Colin case to establish an intent to defraud, thereby distinguishing the fact situation as developed in the Colin case.

Accordingly, in view of the additional matters of proof which must be offered by the State in order to invoke the operation of the statutory presumption, it is our opinion that the decision in Colin v. State, supra, would not act as a nullification of the present prima facie evidence rule in Section 2 of House Bill 403.

The case of State v. Lowenstein, 109 Ohio St. 393, 142 N. E. 897 (1924), upon which the court in the Colin case placed great reliance, tends to support our position in this matter. Under the facts of the Ohio case, a Mrs. McCarthy was employed to make dresses for Lowenstein. At the end of a week's work Lowenstein gave her a check to cover her wages. Mrs. McCarthy continued to work and the check was returned by the bank for insufficient funds. When notified of the nonpayment of the worthless check, Lowenstein stated that he would make the check good. The trial court directed a verdict for the defendant on the ground that in no case where a check is given for a past consideration can an intent to defraud exist. The Supreme Court of Ohio, in reversing the action of the trial court, held in effect that the prima facie evidence rule operated in all cases where checks were given for a past consideration, but the prima facie case could be rebutted. It was pointed out, however, that the question whether the prima facie case had been successfully established or rebutted was for the determination of the jury and should not have been decided by the trial judge. In its opinion the court stated:

"The sole question in this case is this: Does the giving of a check drawn on a bank wherein there are insufficient funds to pay the same, when the check is given for a past consideration, constitute a prima facie

violation of section 710-176 of the General Code ?
This section reads as follows: '... As against the
maker or drawer thereof, the making, drawing,
uttering or delivering of a check, draft, or order,
payment of which is refused by the drawee, shall be
prima facie evidence of intent to defraud, and know-
ledge of insufficient funds in, or credit with, such
bank or other depositary. ...'

"...

"It is evident, therefore, that the learned judge
was of the opinion that in no case where a check is
given for a past consideration can intent to defraud ex-
ist, and that the prima facie evidence of intent to de-
fraud, which, under the statute, exists when payment
of the check is refused by the drawee, is rebutted
when it is shown that the check is given for a past con-
sideration.

"...

"If rebutted, the presumption must be rebutted by
something in the nature of the act of giving a 'cold
check' for a past consideration, which establishes enough
of good faith to counteract the presumption of fraudulent
intent specifically raised by the statute.

"...

"When in payment of a past consideration a man
gives a check, if he gives the check knowing that he has
not funds on deposit to cover it, why does he so act?  He
so acts because he expects to gain an advantage.  He ex-
pects perhaps to deceive persons who are pressing for
payment; he expects them to think that he has paid the old
debt when he has not paid.

"...[The statute] provides ... that the return of the
check is prima facie proof of 'intent to defraud, and know-
ledge of insufficient funds in, or credit with, such bank or
other depositary.'  That is, the statute places the know-
ledge of the insufficiency of funds on the same plane as

intent to defraud, and thus makes proof of such
knowledge evidence of intent to defraud.

"The fact of knowledge cannot be determined
until evidence is taken upon that point. Certainly it
cannot be determined on a statement such as was giv-
en by the prosecutor in this case. Intent to defraud
and knowledge of the insufficiency of the fund are
questions of fact, to be determined on all the evidence
by the jury. . . .

"It is not the holding of this court that the issue
of such a check for a past-due obligation is conclusive
evidence of an intent to defraud. It is a prima facie
evidence only, and may be rebutted in the course of
the trial. The court, however, does held that a prima
facie case of intent to defraud was established upon the
facts here set forth, and that the learned judge erred
in sustaining the motion to take the case from the
jury."

The prosecution in the Lowenstein case was bottomed up-
on a statute very similar to the present Texas statute. With the ex-
ception of the ten days' notice of nonpayment provision, the prima
facie evidence of intent to defraud sections are almost identical in
language. As in the Colin case, the decision in the Lowenstein case
rested upon the sufficiency of the evidence to establish the essential
intent to defraud, and the court held that proof of nonpayment of the
check was sufficient to establish a prima facie case calling for a
jury determination on the question of intent. The additional require-
ment in the Texas statute for proof of the drawer's failure to make
the check good furnishes an even stronger basis for the presumption
of fraudulent intent than was present in the Ohio statute.

The crime of uttering and passing a worthless check given
in payment of a pre-existing debt was first introduced into the law
of this State in 1939 by the enactment of Article 567b. It was cre-
ated to meet a situation different from that covered by the offense
of swindling or obtaining property under false pretense as defined
in Article 1546, V.P.C. By expressly including checks given for
past debts, the Legislature clearly evidenced its intention to protect
creditors from receiving "hot checks" in payment of previously in-
curred obligations. It was pointed out in State v. Lowenstein, supra,

that the purpose of a statute of this nature is to protect the credit intercourse of the community -- "to protect business men all over the state, to protect commercial life; about 90 per cent of the commercial work of the world being done on credit." The exigencies of trade, commerce, and banking have necessitated the creation of a crime of this nature and the adoption of new rules of evidence for the establishment of proof of its commission. As so aptly expressed in the Lowenstein case, the statutory presumption of fraudulent intent arising from the giving of a worthless check for a past obligation is not an unreasonable one, for why would the drawer of the check so act, unless it was because he expected to deceive or to gain an advantage?

In the Colin case, the Court of Criminal Appeals was of the opinion that "a jury would be warranted in finding an intent to defraud under the circumstances shown in the Lowenstein case from Ohio." It is our conception that a fact situation arising under the new hot check law would approach circumstances similar to those present in the Ohio case. In that case, when the check was returned for insufficient funds, the payee notified the drawer of such nonpayment, at which time the drawer stated that he would make the check good. The prima facie rule in House Bill 403 contemplates that a payee, upon nonpayment, must similarly notify the drawer of such fact, thereby eliciting from the drawer some statement or course of conduct which would aid in revealing his clear intention in passing the worthless check. No facts of this nature were present in the Colin case. From our study of the language in the Colin case, we suggest that the Texas court would sustain the sufficiency of such evidence to establish prima facie proof of the essential intent to defraud.

Your remaining two questions concern the necessity of giving the ten days' notice of nonpayment of the check to the drawer, as provided in Section 2 of House Bill 403, as a prerequisite to a prosecution under the act.

We are in agreement with the conclusions stated in your brief to the effect that a prosecution may be brought under the new hot check law without giving the ten days' notice as provided in the statute. As you have so ably stated, it was the primary purpose of the Legislature in including a prima facie evidence provision in the new law to assist the prosecution in those cases in which the other evidence might be insufficient or unavailable to establish the

commission of the offense or in proving some essential element thereof. This statutory presumption is, in a sense, merely a means of "bridging the gap" in situations wherein it is difficult, if not impossible, for the prosecution to adduce subjective evidence as to certain matters not ordinarily capable of proof by other evidence. The employment of the statutory presumption, however, is not compulsory or mandatory upon the State in every such prosecution, but, as in the case of any evidentiary rule, the State may choose to submit evidence based upon such rule, as in its discretion is deemed expedient and proper. Should the State elect to rely upon the statutory presumption, however, it is our opinion that the ten days' notice of nonpayment would then be an indispensable condition precedent to the operation of the prima facie rule of evidence in Section 2.

In the recent case of Watson v. State, 229 S.W.2d 621,623 (Tex. Crim. 1950), the Court of Criminal Appeals ruled upon this very point:

"Proof of presentment for payment of a check is required only when the presumptions provided in Art. 567b, Vernon's P.C., are relied upon by the State.

"Here, the owner of the automobile proved directly that the appellant had no account with the bank upon which the check was drawn. The State, therefore, did not rely upon the presumptions arising by reason of nonpayment of the check after presentation for payment."

Upon the same authority and for like reason, it is our further opinion that a prosecution may be initiated without the ten days' notice of nonpayment of the check, in a situation where the worthless check is given in payment of a pre-existing indebtedness, but where other circumstances are present to sufficiently establish the necessary intent to defraud.

## SUMMARY

Section 2 of Article 567b, V.P.C., as amended by House Bill 403, Acts 52nd Leg., R.S. 1951, ch. 305, p. 496, in prescribing a rule of prima facie evidence of

intent to defraud in aid of a prosecution for passing a worthless check is valid and constitutional.

Where a check is given in payment of a pre-existing debt, the failure of the drawer to pay the holder the amount of the check within ten days after notice of its nonpayment by the drawee is prima facie evidence of intent to defraud on the part of the drawer.

The ten days' notice to the drawer of nonpayment of a worthless check, as provided in Section 2 of House Bill 403, is not a prerequisite to a prosecution under the Act.

Yours very truly,

APPROVED:

PRICE DANIEL
Attorney General

Mary Kate Wall
Reviewing Assistant

By *Hugh Lyerly*

Charles D. Mathews
First Assistant

Hugh Lyerly
Assistant

HL:mf